John A. WARD and Hilda Ward, Plaintiffs,

v.

J. M. ROUNTREE, District Director of Internal Revenue, Defendant.

Civ. A. No. 2517.

United States District Court
M. D. Tennessee,
Nashville Division.

April 13, 1961.

Hubert A. McBride, Benjamin Goodman and Thomas F. Johnston, of Armstrong, McCadden, Allen, Braden & Goodman, Memphis, Tenn., for plaintiffs.

Harvey G. Schneider, Atty., Tax Division, Dept. of Justice, Washington, D. C., and Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., for defendant.

WILLIAM E. MILLER, District Judge.

In this action, the plaintiffs seek recovery of $141,315.70 paid to defendant pursuant to an assessment of income tax deficiency, with interest, for the year 1954. The plaintiffs as husband and wife filed a joint return for the year in question, but the controversy relates to the income of the husband alone. Consequently, the term "plaintiff" when hereafter used will refer to the plaintiff John A. Ward.

The issue presented is whether plaintiff received constructive dividends in 1954 as a result of stock redemptions by two corporations in which plaintiff and his brother, Joseph Ward, were the principal shareholders. The facts, many of which have been stipulated, are not seriously controverted.

Prior to 1954, plaintiff and his brother, Joseph Ward, each owned approximately one-half of the outstanding stock of two paint contracting corporations, Southern Painting Company, Inc., incorporated under the laws of Tennessee on October 18, 1946, with its principal place of business at Memphis, Tennessee, and Joseph Ward Painting Company, incorporated under the laws of Missouri on October 31, 1946, with its principal place

of business at St. Louis, Missouri. Of the 500 shares of stock of each corporation, plaintiff and Joseph Ward each owned 249½ shares, and their mother, Mrs. N. M. Ward, owned one qualifying share. Plaintiff, who resided at Memphis, was president of Southern Painting Company, formulated its policies, and directed its business and administrative activities. He was also vice-president and a director of the St. Louis corporation. In similar fashion, Joseph Ward, who resided in St. Louis, was president of the Joseph Ward Painting Company, formulated its policies and directed its business and administrative affairs. Joseph Ward was also vice-president and a director of Southern Painting Company. Meetings of the board of directors of each company were generally held in the autumn of each year and, for the convenience of the directors, were held at the same location, one meeting immediately following the other.

For more than a year prior to June 1954, there was disagreement between the two brothers with respect to various policies to be pursued by the corporations. Plaintiff favored centralization of operations, concentration on procuring smaller and more profitable contracts, and continuing the practice of sharing profits with employees in the form of bonuses, a practice which had been followed by the Memphis corporation under plaintiff's management throughout its existence. These policy views of plaintiff were directly contrary to those of Joseph Ward, and the St. Louis corporation under Joseph Ward's management and direction had accordingly never adopted or pursued such policies.

On June 19, 1954, special meetings of the boards of directors were held in St. Louis. The purpose of the meetings, as reflected by the minutes, was to discuss the possibilities of engaging in a large expansion program and opening offices of the two corporations in other cities. The minutes of the Southern Painting Company reflect that when no agreement could be reached, Joseph Ward expressed a desire to sell his stock in the company if an acceptable price could be agreed upon. Thereupon, a motion by plaintiff that the company purchase the stock of Joseph Ward at a price to be agreed upon at a later date was adopted. Similarly, the minutes of Joseph Ward Painting Company reflect that when no agreement could be reached as to an expansion program, plaintiff expressed a desire to sell his stock in that company if a price could be agreed upon, and a motion by Joseph Ward that the company buy plaintiff's stock at a price to be agreed upon was adopted. Subsequently, and pursuant to appropriate resolutions of the respective boards of directors on September 11, 1954, Southern Painting Company purchased Joseph Ward's stock in that company for $170,000, and Joseph Ward Painting Company purchased the stock in that company held by plaintiff for $136,000.[1] As a result plaintiff became the sole stockholder (with the exception of his mother who owned one qualifying share) in Southern Painting Company, and Joseph Ward became the sole stockholder (with the exception of his mother who owned one qualifying share) in Joseph Ward Painting Company.

In his 1954 income tax return, plaintiff reported the sale of his stock in Joseph Ward Painting Company as the sale of a capital asset and paid tax at capital gains rates on the profit. He reported no income resulting from Southern Painting Company's purchase of Joseph Ward's stock. Upon audit of plaintiff's tax return, the Commissioner determined that plaintiff had realized additional income of $170,000 in the form of dividends from Southern Painting Company by virtue of the redemption of Joseph Ward's stock. The Commissioner computed plaintiff's tax liability accordingly and assessed a deficiency in the amount of $123,961.14, with interest of $17,354.56. After payment of these amounts and the timely filing of claim for refund, the present suit was instituted.

---

1. The prices paid for the stock were based upon fair market value as reflected by unaudited monthly balance sheets.

The Government advances two theories. First, it contends that the redemption by Southern Painting Company of Joseph Ward's stock resulted in a constructive dividend to plaintiff, the remaining stockholder. Second, it submits, in the alternative, that $136,000 which plaintiff received from Joseph Ward Painting Company in the redemption of his stock in that company should be treated as a dividend and taxed as ordinary income rather than as capital gain.

A primary and crucial question is whether the two corporations and the two transactions must be viewed as a whole rather than separately. Counsel for both parties, although contending that certain cases are analogous, apparently concede that there is no controlling precedent.

It is abundantly clear from the entire record that the corporations were separate and distinct entities in every practical and legal sense. They were organized under the laws of different states and maintained their places of business in different cities. Each was under the separate and independent management and control of its local managing officer who formulated its policies and conducted its general operative and administrative affairs. There was no intermingling of assets or records, nor was there any interrelation in the procurement and performance of contracts. Each operated in its own trade area.[2] There is no convincing evidence that either before or after the stock transactions the companies maintained any affiliation or held themselves out to the public as interrelated companies. There was no parent-subsidiary relationship.

Under the facts and circumstances present in this case, and in the absence of any statutory or judicial authority for holding that stock redemptions by two corporations such as are involved here may not be treated independently for tax purposes, the Court is of the opinion that the Government may not disregard the identity of the corporations and the two stock redemptions and treat the redemptions as one transaction in determining plaintiff's tax liability. Cf. Moline Properties v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499; Byerlite Corp. v. Williams, 6 Cir., 1960, 286 F.2d 285; Freedman v. United States, 6 Cir., 1959, 266 F.2d 291.

The defendant contends that the redemption of Joseph Ward's stock in Southern Painting Company resulted in a taxable dividend to plaintiff, the remaining stockholder. Under the applicable provisions of the Internal Revenue Code as construed by the courts, and as interpreted by the Treasury Department, this contention must be rejected.

Section 302 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 302) specifically provides that a redemption shall be treated as a distribution in payment of stock if the redemption is in complete redemption of all of the stock owned by the shareholder. The pertinent provisions of that section are as follows:

"(a) General rule. If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

\* \* \* \* \* \*

"(b) (3) Termination of shareholder's interest.—Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder."

Section 317(b) defines a redemption as follows:

"Sec. 317(b) Redemption of stock. —For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether

---

**2.** The trade area of the St. Louis corporation is not disclosed; however, plaintiff testified that 95% of Southern Painting Company's business was in the city of Memphis.

or not the stock so acquired is cancelled, retired, or held as treasury stock."

Plaintiff's claim for refund was rejected by the defendant by letter of February 18, 1958. On September 3, 1958, the Court of Appeals for the Third Circuit handed down its decision in Holsey v. Commissioner of Internal Revenue, 258 F.2d 865. In that case it was held that where a taxpayer owned 50% of the stock of a closely held corporation and assigned his option to purchase the remaining stock to the corporation which exercised said option, resulting in a redemption of all outstanding shares not owned by the taxpayer, the payment by the corporation to the seller was not essentially equivalent to a distribution of taxable dividends to the taxpayer. The Court, in reversing the Tax Court, used language which is particularly applicable to the present case:

"It will be observed that section 115(a) defines a dividend as a distribution made by a corporation 'to its shareholders'. Accordingly unless a distribution which is sought to be taxed to a stockholder as a dividend is made to him or for his benefit it may not be regarded as either a dividend or the legal equivalent of a dividend. Here the distribution was made to the Greenville Company, not to the taxpayer. This the Government, of course, concedes but urges that it was made for the benefit of the taxpayer. It is true that it has been held that a distribution by a corporation in redemption of stock which the taxpayer stockholder has a contractual obligation to purchase is essentially the equivalent of a dividend to him since it operates to discharge his obligation. [citing cases]. But where, as here, the taxpayer was never under any legal obligation to purchase the stock held by the other stockholder, the Greenville Company, having merely an option to purchase which he did not exercise but instead assigned to the Holsey Company, the distribu-

tion did not discharge any obligation of his and did not benefit him in any direct sense.

"It is, of course, true that the taxpayer was benefited indirectly by the distribution. The value of his own stock was increased, since the redemption was for less than book value, and he became sole stockholder. But these benefits operated only to increase the value of the taxpayer's stock holdings; they could not give rise to taxable income within the meaning of the Sixteenth Amendment until the corporation makes a distribution to the taxpayer or his stock is sold." 258 F.2d at page 868.

The Internal Revenue Service in Technical Information Release No. 109, issued October 30, 1958, stated that it would follow the decision in the Holsey case in the following language:

"Internal Revenue Service announced today it will follow the adverse decision of the Court of Appeals for the Third Circuit, rendered September 3, 1958, in Joseph R. Holsey et ux v. Commissioner in cases involving similar facts and circumstances.

"In the future, IRS stated it will not treat the purchase by a corporation of one shareholder's stock as a dividend to the remaining shareholders merely because their percentage interests in the corporation are increased."

Subsequent Revenue Rulings have been in accord. Revenue Rulings 58-614 and 59-286. The latter ruling of the Commissioner was based upon the following facts: Two brothers owned 50% of the stock of a corporation. An agreement in effect at the death of one brother provided that upon the death of either stockholder the survivor would either purchase the stock of the deceased or vote the stock for liquidation of the corporation. After the death of the one brother, it was decided that the corporation should redeem the stock of the deceased

brother. The ruling that such redemption by the corporation did not result in a constructive dividend to the remaining stockholder states, in part:

"In both the Edenfield and Holsey cases, the Government was seeking to tax one shareholder on the redemption of another stockholder's shares on the theory that the redemption was accomplished for the benefit of the first shareholder. However, the Internal Revenue Service has acquiesced in the Edenfield opinion and has agreed to follow the Court of Appeals decision in the Holsey case in similar factual circumstances. See Rev.Rul. 58–614, C.V. 1958–2, 920.

"Although the Edenfield and Holsey cases, supra, are distinguishable . from the instant case, there is no authority affirmatively supporting the proposition that a redemption of one stockholder's shares, at fair market value, constitutes a dividend to a remaining shareholder." Rev. Rul. 59–286.

As pointed out by counsel for plaintiff, both the Holsey case and Revenue Ruling 59–286 presented stronger factual bases than the present case for the Commissioner's contention that there were constructive dividends to the remaining stockholders. In the first instance, the remaining stockholder owned a valuable option to purchase which was assigned to and exercised by the corporation, presumably for the benefit of the remaining stockholders. In the latter, the remaining stockholder was relieved of an obligation to either purchase the deceased brother's stock or liquidate the corporation.

Counsel for the Government argues that the Holsey decision is distinguishable because in that case the corporation purchased its own stock in its own behalf under an option to purchase at a bargain price, which option had been properly assigned to the corporation. The distinction, however, would appear to strengthen the plaintiff's position here since the value of the stock of the taxpayer, who became the sole stockholder, was increased by the redemption of other outstanding stock at less than book value. No such benefits inured to the plaintiff in the case at bar. On the contrary, the defendant has sought to establish that Southern Painting Company paid more than book value for the Joseph Ward stock, the effect of which would operate to decrease the value of plaintiff's stock holdings. The treatment to be accorded stock redemptions for more or less than fair market value was announced by the Internal Revenue Service in the above-mentioned Technical Information Release of October 30, 1958 (TIR–109) as follows:

"IRS also pointed out that if a shareholder surrenders stock to a corporation for less than its fair market value, such surrender may be a gift or compensation to the shareholders who remain interested in the corporation.

"Conversely, according to the Revenue Service, if a corporation pays more than fair market value for its stock, this payment may be compensation to the shareholder surrendering stock or may be a gift to him from the shareholders who remain interested in the corporation."

Counsel for defendant points out certain factors as being indicative of a taxable dividend in this case, such factors being (1) that the Southern Painting Company had no plan of contracting its business activities subsequent to the stock redemption; (2) that there was no plan for dissolution or ultimate contraction; and (3) that only nominal dividends had been paid, notwithstanding the fact that large amounts of undistributed earnings were permitted to accumulate. While such factors may be considered in a proper case to determine whether all purchases of its own stock by a corporation taken together accomplish the same result as a declaration of a dividend, they are not significant here where the statute defines in clear terms the tax treatment which is to be accorded to the stock transaction in-

volved. The decisions cited by defendant as establishing criteria for determining whether a distribution is essentially a dividend are readily distinguishable. In Earle v. Woodlaw, 9 Cir., 1957, 245 F.2d 119; Commissioner v. Roberts, 4 Cir., 1953, 203 F.2d 304; and Wall v. United States, 4 Cir., 1947, 164 F.2d 462, the question was whether there was a business purpose in the alleged redemption of the stock of the only or sole shareholder of the corporation. Rheinstrom v. Connor, 6 Cir., 1942, 125 F.2d 790, certiorari denied 317 U.S. 654, 63 S.Ct. 49, 87 L.Ed. 526; and Bazley v. Commissioner, 3 Cir., 1946, 155 F.2d 237, presented questions concerning alleged pro rata redemptions of stock. The facts in all of these cases are radically different from those in the case at bar.

The important factor here is that the redemption was a *complete* redemption of all of the stock owned by Joseph Ward. The Court further stated in the Holsey decision:

"The most significant [criterion] is said to be whether the distribution leaves the proportionate interests of the stockholders unchanged as occurs when a true dividend is paid. Ferro v. Commissioner of Internal Revenue, 3 Cir., 1957, 242 F.2d 838, 841. The application of that criterion to the facts of this case compels the conclusion that in the absence of a direct pecuniary benefit to the taxpayer the Tax Court erred in holding the distribution in question taxable to him. For in his case prior to the distribution the taxpayer and the Greenville Company each had a 50% interest in the Holsey Company whereas after it was over the taxpayer had 100% of the outstanding stock and the Greenville Company none.

"The Government urges the lack of a corporate purpose for the distribution and the taxpayer seeks to establish one. But we do not consider this point for, as we have recently held, 'It is the effect of the redemption, rather than the purpose which actuated it, which controls the determination of dividend equivalence.' Kessner v. Commissioner of Internal Revenue, 3 Cir., 1957, 248 F.2d 943, 944." 258 F.2d at page 868.

It is true, as counsel concede, that the two brothers could have accomplished their purpose in a manner that would have resulted in a different tax liability. However, as Mr. Justice Potter Stewart, while a member of the Court of Appeals for the Sixth Circuit, in Woodworth v. Commissioner, 218 F.2d 719, observed:

" 'If a taxpayer has two legal methods by which he may attain a desired result, the method pursued is determinative for tax purposes without regard to the fact that different tax results would have attached if the alternative procedure had been followed.' Woodruff v. Commissioner, 5 Cir., 1942, 131 F.2d 429, 430. Indeed the statute directs that the 'manner' of the transaction be a controlling factor." 218 F.2d at page 724.

Other cases upon which the Government relies are also distinguishable. In Holloway v. Commissioner, decided December 12, 1951 (1951 P–H T.C. Memorandum Decisions, par. 51359), 6 Cir., affirmed 203 F.2d 566, the taxpayer who owned approximately half of the stock of the corporation had become involved in litigation with the other shareholder. As a compromise of the litigation, the taxpayer contracted to purchase the other shareholder's stock. The contract was thereafter assigned to the corporation which purchased the stock. The assignment of the contract to the corporation was then treated as the redemption of stock of a sole stockholder in the corporation. In its opinion, the Tax Court stated:

"The tax consequences of a transaction depend upon what was actually done, not upon what could have been done. Wall v. United States, 164 F.2d 462 (36 AFTR 423 (CCA

4)). Here, we think, petitioner actually engaged in two separate and distinct transactions, one transaction being the purchase of the stock from the Duggans, and the other transaction being the surrender of the shares for cancellation and retirement."

In Zipp v. Commissioner, 28 T.C. 314, affirmed 6 Cir., 259 F.2d 119, the Tax Court found on an issue of fact that the taxpayers owned only two of the fifty outstanding shares of stock in the corporation; that the taxpayers were mere nominees of their father who owned the remaining 48 shares; and that they acquired the father's entire stock holdings while the corporation paid for the purchase out of its earned surplus. The many facts set out in the Tax Court's Findings of Fact, from which the Tax Court and the Court of Appeals concluded that the taxpayers had received constructive dividends, clearly distinguish the Zipp case.

The Government also relies upon Glenn-Minnich Clothing Co. v. Commissioner, decided September 30, 1960 (1960 P–H T.C. Memorandum Decisions, par. 60,-207). In that case, however, the taxpayers who were held to have received constructive dividends had actually paid for the stock prior to its redemption by the corporation. Of significance is the following quotation from the Court's opinion:

"While it is probable that some other method or methods of securing the surrender of Myrl's interest in the corporation would not have resulted in a dividend to the petitioners Herman and Minnich or in any net economic difference in their situation, taxability is more dependent upon what was done than what might have been done, and in the area of constructive dividends, the form of the transaction is of great significance. * * * Here, the transaction took the form of a purchase of the stock by petitioners and the contract of March 10 was a part of that transaction, whereby corporate funds were expended to further that purpose."

It is thus seen that the authorities upon which the Government relies fall into three categories, viz., (1) pro rata redemptions of stock, (2) redemptions of stock of a sole shareholder, and (3) purchases of stock by a shareholder with payment being made by the corporation, all of which, in the absence of a business purpose, result in taxable dividends. The present case falls into none of these categories. Here, in the Court's opinion, there was a true redemption by the corporation which did not increase the value of the other outstanding stock. Under such circumstances, the redemption does not result in a constructive dividend to the remaining stockholder.

Defendant's alternative theory that plaintiff's receipt of $136,000 from the sale of his stock in Joseph Ward Painting Company should be taxed as ordinary income rather than as capital gain, has not been presented in the pleadings but was first advanced by defendant's counsel at the hearing. While there is some question as to whether this theory is properly before the Court, (Rule 12(b) 28 U.S. C.A.; cf. Paine v. United States, D.C. Mass., 32 F.Supp. 672, 674), the Court has nevertheless considered the merits of such theory.

To sustain its alternative position, defendant again contends that all of the transactions between the two brothers and the two corporations must be viewed as a whole rather than separately.

What has already been said to the effect that the separate identity of the corporate entities and the stock redemptions may not be disregarded is equally pertinent to defendant's alternative theory. The only additional authorities cited by defendant's counsel [3] were concerned with the includability of reciprocal trusts in decedents' gross estates, and not with cor-

3. Moreno's Estate v. Commissioner, 8 Cir., 260 F.2d 389; Hill's Estate v. Commissioner, 2 Cir., 229 F.2d 237; Lehman v. Commissioner, 2 Cir., 109 F.2d 99.

porate redemptions. The Court finds no authority and none has been cited to support this theory of the Government.

Judgment will be entered for the plaintiff in accordance with the prayer of the complaint.