Argued April 7, reversed and remanded June 15, 1966

# THE FIRST NATIONAL BANK OF OREGON ET AL v. STATE TAX COMMISSION

415 P. 2d 744

*James A. Larpenteur, Jr.,* Portland, argued the cause for appellants. With him on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Gerald F. Bartz, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and SCHWAB, Justices.

SCHWAB, J. (Pro Tempore).

This is an appeal from a decree of the Oregon Tax Court upholding as modified an income tax deficiency imposed by defendant against plaintiffs. 2 OTR Adv

Sh 187. The deficiency resulted from an exchange of stock of Engineering Supply Company in return for certain shares of the capital stock of Gabriel Boiler Company, both Oregon corporations, during the calendar year 1956. We hereafter refer to these corporations as Engineering and Boiler respectively.

William E. Gabriel and Georgie Gabriel were husband and wife. While this litigation was pending, William E. Gabriel died and an order substituting The First National Bank of Oregon, executor of the estate of William E. Gabriel, deceased, as party appellant was issued by this court on April 15th, 1966. Georgie Gabriel is a party to this matter solely by reason of having filed her 1956 income tax return jointly with her husband William.

The sole question in this case is whether gain attributable to William E. Gabriel (whom we hereinafter refer to as plaintiff) upon the receipt of the stock of Engineering from Boiler in December, 1956 should be based on 100 per cent of the value of that stock as contended by defendant—or should there be deducted therefrom the value of the Engineering stock owned by William E. Gabriel at the time of the agreement of October, 1955 to enter into the exchange transaction.

Plaintiff shared, with certain others, interests in two closely held corporations, Boiler and Engineering, and was treasurer of both. Plaintiff owned 31.2 per cent and his brother Chris owned 40.3 per cent of the stock in Boiler. The two brothers were also the principal stockholders in Engineering, each owning 45 per cent.

Being unable to resolve basic differences, the brothers decided to go their separate ways. Pursuant to a separation agreement dated October 15, 1955, plaintiff was to surrender all of his stock in Boiler to acquire

100 per cent ownership of Engineering, the method of execution to be determined by the parties' lawyers and accountants.

The most simple and direct way to accomplish this would have been for the plaintiff to trade his stock in Boiler for all the outstanding stock in Engineering. However, such an exchange would have rendered plaintiff liable for federal as well as state tax on Engineering stock received in exchange for his Boiler stock. Under Oregon tax law as of the time of this transaction there was no way for plaintiff to avoid a tax on the stock he was newly acquiring in Engineering. The fundamental issue is whether by using a statutory route designed to avoid federal taxation, he increased his state tax liability.

To avoid the federal tax, the parties to the exchange qualified the transaction as a corporate separation under Section 355 of the Internal Revenue Code. Section 355 provides, insofar as pertinent, that a shareholder of a distributing corporation shall not have a recognized gain or loss upon the receipt of stock if the following conditions are satisfied:

(1) A corporation distributes to its shareholders, with respect to their stock, solely stock of a corporation which it controlled immediately before the distribution;

(2) The transaction was not used principally as a device for distributing the earnings and profits of either corporation;

(3) The requirements of § 355(b) relating to the active conduct of a trade or business are satisfied; and

(4) All of the stock of the controlled corporation held by the distributing corporation is distributed to its shareholders.

For plaintiff to comply with the requirements set forth in Section 355, it was necessary for Engineering to become a wholly owned subsidiary of Boiler. Insofar as pertinent to the case at bar, the method evolved contemplated two steps:

(1) Boiler would acquire all of the Engineering stock;

(2) Boiler would distribute all of the Engineering stock to plaintiff in exchange for his stock in Boiler.

Step number one was consummated on May 2, 1956. Step two was formalized by the board of directors of Boiler on November 30, 1956. By following this course, plaintiff qualified for non-recognition pursuant to Section 355 and except for some taxable "boot" not relevant here, the whole transaction was not taxed by the federal government.[1]

In Oregon the computation of gain or loss (the excess of the fair market value of the stock received over the cost basis of the stock exchanged) is set forth in ORS 316.260 and is entirely recognized under ORS 316.275, unless a statutory exception is found. At the time of this transaction, Oregon did not have a code provision comparable to Section 355.[2] Plaintfif concedes that because Oregon had no such exception in its tax code, 55 per cent of the value of Engineering (less his basis in Boiler stock) is taxable to him by

---

[1] The case was also litigated in the U. S. Tax Court, reported as W. E. Gabriel Fabrication Co. v. Commissioner and William E. and Georgie Gabriel v. Commissioner, 42 T C 545 (June 16, 1964) on an issue not relevant here.

[2] With the enactment of ORS 316.281 (5) (Oregon Laws 1959, ch 581, pp. 1097-98) distribution of stock and securities of controlled corporations receives the same tax treatment under the state income tax law as under the Internal Revenue Code. Oregon State Tax Commission Regulations, 1965, Reg. 316.281 (5).

Oregon. He argues that since the remaining 45 per cent of the Engineering stock was transferred to Boiler only as a step in a transaction designed to vest 100 per cent of Engineering in him, he has no tax liability on the 45 per cent which he owned prior to entering into the separation agreement.

The principal argument of the tax commission is that step one and step two were separate transactions, and that step two, viewed independently, was a fully taxable exchange under Oregon statutes. The taxpayer takes the position that step one and step two were parts of a single transaction and that viewed in this light there was no taxable exchange of that portion of the Engineering stock which he owned both at the beginning and at the end of the single transaction.

Whether a given situation consists of several transactions or several steps within one transaction is difficult to determine. As one treatise puts it, "reconciliation of the decided cases is impossible and a recital of the pros and cons would bring the exhausted reader back to where he started." 3 Mertens, Law of Federal Income Taxation § 20.165, p. 725.

The parties stipulated that the intent of the agreement entered into on October 15, 1955 was that plaintiff would end up with the ownership of all of the capital stock of Engineering and would give up his interest in Boiler. The parties also agreed that plaintiff terminated his interest in the operation of Boiler as of that date. The tax commission, contending that two reorganizations occurred, objects to treating this plan as having occurred in the same manner as if plaintiff had directly purchased the stock from his brother and other Engineering stockholders, at all times having retained ownership of his own Engineering stock.

■ The issue raised here has not been previously

considered by this court. While federal decisions are not binding on the state of Oregon with reference to local taxes, such decisions are entitled to be considered for whatever instructive value they may have in the particular case. *Kuhns v. State Tax Com.*, 223 Or 547, 355 P2d 249. Turning to the federal decisions, we find that the Board of Tax Appeals (now the Tax Court of the United States) originally followed the rule urged by the respondent tax commission in the case at bar. *Minnie C. Brackett, Administratrix*, 19 BTA 1154, aff'd. sub. nom. *Estate of Charles H. Brackett v. Comm.*, 57 F2d 1072 (7th Cir 1931) and *William H. Mullins*, 14 BTA 426 (1928).

In the *Brackett* case, when individuals transferred certain assets to a newly organized corporation and received the corporation's check which they immediately endorsed and turned back to the corporation in return for its capital stock, the transaction was held to be a sale resulting in profit at the time the check was received, rather than an exchange of assets for stock. In its opinion the board said that if the transaction was not a sale of assets for cash, it amounted merely to a subterfuge and a deception against the state of Indiana. The board declared further:

"* * * The parties here obtained the benefits of the transaction, actually carried out to meet the requirements of the state law, and then for another purpose, contend that the transaction was something else." 19 BTA at 1159.

The situation presented in the *Brackett* case is analogous to the case at bar in that in each case plaintiff was asking the court to look at the whole effect of a transaction in order to overlook an intermediate step that was undertaken only to satisfy the requirements of another governing body.

The reasoning used by the board in the *Brackett* and *Mullins* cases is, however, no longer followed by the U. S. Tax Court. As the U. S. Tax Court points out in the case of *Walter S. Heller,* 2 T C 371, 383, aff'd., 147 F2d 376 (9th Cir 1945), cert. den., 325 US 868, 65 S Ct 1405, 89 L Ed 1987 (1945):

> "The *Brackett* and *Mullins* cases, *supra,* tend to support petitioner's contention that each step taken pursuant to a plan is to be treated as a separate transaction. That view is no longer held. 'For income tax purposes, the component steps of a single transaction cannot be treated separately. * * *' Effect is to be given to the substance rather than to the form. * * * In determining the substance of a transaction it is proper to consider the situation as it existed at the beginning and end of the series of steps as well as the object sought to be accomplished, the means employed, and the relation between the various steps." (Citations omitted). *Accord, National Bank of Commerce of Norfolk v. United States,* 158 F Supp 887 (E.D. Va. 1958).

Looking at the beginning and the end of the series of exchanges in the case at bar, it is clear that the basic purpose and result of the transaction was to increase plaintiff's holding from 45 per cent to 100 per cent of Engineering.

An example of an application of the test enunciated in the *Heller* case, *supra,* is the so-called "Kimbell-Diamond doctrine": When stock in a corporation is purchased for the purpose and with the intent of acquiring its underlying assets and that purpose continues until the assets are taken over, no independent significance tax-wise attaches to the several steps of a multiple step transaction. *Kimbell-Diamond Milling Co.,* 14 T C 74 (1950), aff'd. per curiam, 187 F2d 718 (5th Cir 1951), cert. den., 342 US 827, 72 S Ct 50, 96

L Ed 626 (1951). The court in *Kimbell-Diamond*, relied on language found in *Commissioner v. Ashland Oil & Refining Co.*, 99 F2d 588, cert. den., 306 US 661, 59 S Ct 786, 83 L Ed 1057:

> "* * * [W]ithout regard to whether the result is imposition or relief from taxation, the courts have recognized that where the essential nature of a transaction is the acquisition of property, it will be viewed as a whole, and closely related steps will not be separated either at the instance of the taxpayer or the taxing authority." 14 T C at 80.

Whether steps which are taken seriatim are to be considered individually or as integrated parts of a single transaction is finally determined by their mutual interdependence. The test is whether the steps are so mutually interdependent that the legal relationship created by one would have been fruitless without the completion of the series. *Dixie Portland Flour Co.*, 31 T C 641, 651 (1958); *Long Island Water Corporation,* 36 T C 377 (1961).

In the *Dixie* case the court found no connection between two transactions, saying, "we have been shown no plan of liquidation or acquisition which would justify our fusing the two into one indivisible transaction." (31 T C at 652). Here, on the contrary, respondent concedes that the over-all plan contemplated complete ownership by plaintiff of all the Engineering stock. No other inference can be read into plaintiff's course of action. The relationship created by step one was the antithesis of the posture he was seeking and was only an intermediate step on the way to his single, fixed goal, complete ownership of Engineering.

The tax commission cites *Bard-Parker Co. v. Commissioners*, 218 F2d 52 (2nd Cir 1954), cert. den., 349 US 906, 75 S Ct 582, 99 L Ed 1242, as authority for

the proposition that the fact that the interested parties would not have entered into the arrangement unless more than one transfer was made does not necessarily mean that the arrangement was one transaction. The case contains language to that effect, but there, as distinguished from the case at bar, the parties to the second transfer were different in part from the parties to the first transfer.

*Main Steel, Inc. v. United States,* 174 F Supp 702, 713 (D. Me. 1959) is more analogous in principle to the case at bar. There the court said:

> "* * * The transfer of the stock from Products to Fidelity and its sale by Fidelity to the Soule group was contemplated from the inception of the plan of reorganization; it was an integral part of the plan as adopted by the stockholders of Products and formalized by the written agreement signed by Mr. Soule, as President of Products and individually, and by Mr. Braun, as Conservator of Fidelity; and even assuming that there was, as plaintiff asserts, no legally binding obligation on Fidelity to sell plaintiff's stock to the Soule group, it is manifest that the incorporation and exchange would never have been agreed upon without the supplemental agreement turning over the stock to Fidelity and eventually to the Soule group, which was, in fact, the sine qua non of the entire transaction. The series of steps which involved the organization of plaintiff, the exchange of Products' assets for plaintiff's stock, the transfer of plaintiff's stock by Products to Fidelity and the sale of the stock by Fidelity to the Soule group can only be considered as parts of a single integrated transaction."

The court in that case also emphasized the transitory aspects of the ownership by Fidelity of plaintiff's stock, saying it was without substance and merely

part of a plan which contemplated the immediate transfer of the stock to the Soule group.

The tax commission cites *Ward v. Rountree,* 193 F Supp 154 (M.D. Tenn. 1961) in support of its contention that the taxpayer being able to exchange the stock directly or by the method he chose, is bound by the latter. Specifically, the commission relies on the following quotation in the *Ward* case, which in turn is a quotation from *Woodworth v. Commissioner,* 218 F2d 719, 724 (6th Cir 1955):

> "* * * 'If a taxpayer has two legal methods by which he may attain a desired result, the method pursued is determinative for tax purposes without regard to the fact that different tax results would have attached if the alternative procedure had been followed.' Woodruff v. Commissioner, 5 Cir., 1942, 131 F.2d 429, 430. Indeed the statute directs that the 'manner' of the transaction be a controlling factor."

It should be noted that the quotation from *Woodworth* is in turn a quotation from *Woodruff v. Commissioner,* 131 F2d 429 at 430. A review of the *Ward, Woodworth* and *Woodruff* opinions discloses that the principle on which the tax commission relies comes into play only after a determination that the taxpayer's activities consisted of two or more separate transactions rather than a single transaction. The principle has no bearing in determining whether a given set of facts constitutes a single transaction or multiple transactions. The *Woodruff* opinion carefully points out that the doctrine in question was applied only after the court found that there was no unity of purpose on the part of the taxpayer which "could suffice to convert these two well defined and wholly unrelated transactions into one." 131 F2d at 431.

As pointed out in 3 Mertens, Law of Federal Income Taxation, § 20.161, pp. 689-90, there is no mechanistic formula by which that issue can be resolved:

"The determination and recognition of gain or loss on sales and exchanges depends naturally upon the scope and content of the particular sale or exchange in question. What was it? How much did it embrace? How many steps were part of it? What did it really amount to? These are questions which often press for answers in determining the taxable consequences of conduct. And, judging from the recurring cases and hopelessly conflicting decisions, there is no easy answer or royal road to learning here."

■ We believe that the facts of this case are most analogous to those which have given rise to the rule that an individual step of a multi-step transaction will be disregarded when it adds nothing of substance to the completed affair.

■ The tax commission further contends that the plaintiff's position is inconsistent with the one he took in the U. S. Tax Court. Nothing in the record supports this conclusion. The separation agreement was in evidence in the federal court proceedings. The plaintiff's position in federal court as to the reasons for the agreement and the end sought to be achieved by it was precisely the position which he took in the court below and takes before this court.

■ It follows that the plaintiff should not be taxed on the 45 per cent of Engineering which he owned on the date the separation agreement was entered into and which he owned when the agreement became fullly executed.

Reversed and remanded for the entry of a decree in accordance with this opinion.