SCHMITT et al.

v.

COMMISSIONER OF INTERNAL REVENUE.

LEHREN

v.

COMMISSIONER OF INTERNAL REVENUE.

Nos. 11148, 11149.

United States Court of Appeals Third Circuit.

Argued Dec. 18, 1953.

Decided Jan. 8, 1954.

Norman D. Keller, Pittsburgh, Pa., (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for petitioner.

Harry Marselli, Washington, D. C. (H. Brian Holland, Assistant Atty. Gen., Ellis N. Slack, Harry Baum, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

These cases involve the taxability of a stock dividend. Joseph P. Schmitt and James S. Lehren on December 31, 1946, owned, respectively, 168 shares and 199 shares in a corporation called the Wolverine Supply & Manufacturing Company. On that date a certificate for 892 shares in the name of Wolverine was held by the Citizens National Bank of Washington, Pennsylvania. The bank returned the certificate to Wolverine on April 21, 1947. As a result of this return there was left in the treasury of the company 1486 shares of its capital stock. Schmitt and Lehren owned all the rest. In July, 1947, the shares thus held in the treasury of the corporation were, pursuant to action by the Board of Directors, distributed to shareholders Schmitt and Lehren in proportion to their holdings. The result was that instead of the shares being held in the treasury they were in the hands of shareholders Schmitt and Lehren. The Commissioner asserted that this distribution was a taxable transaction and the Tax Court was persuaded to agree, 20 T.C. 352.

On the above statement of facts it would appear that no taxable event has occurred. To quote previous language from this Court: "The Supreme Court has decided where the proportional interest of the stockholders remains the same and where stock dividends are paid strictly in kind, where there is no severance of capital, that the incidence of income taxation does not occur." Wiegand v. Commissioner, 3 Cir., 1952, 194 F.2d 479, 481. The Supreme Court cases are there listed and discussed.

Unless facts to be recited later change this case, the distribution described above fits clearly into the type of transaction first held nontaxable in Eisner v. Macomber, 1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, and so held ever since. Only two persons owned any stock of this corporation. The rest of it had been acquired by the corporation and was in its treasury. The two shareholders got certificates for these shares which had been held in the treasury in the same proportion as that evidenced by certificates which they already held. Nothing was changed thereby except that they had two pieces of paper instead of one. The proportion of the corporation's assets owned by each of the shareholders was just the same as it was before. Neither was richer; neither was poorer. The situation appears to be just the same as the one that has been presented in all the cases involving taxability or nontaxability of stock dividends.

However, the Commissioner asserts that this transaction is different. He says there was a plan here by which Schmitt and Lehren were to become the owners of the Wolverine corporation, that this last stock distribution was the culmination of the plan and that this culmination was a taxable event. Taxpayers claim that the finding that there was such a plan is not supported by the evidence. Furthermore, they say, even if there were such a plan, the conclusion that a taxable event arose out of whatever was done is not a correct conclusion. With this statement we agree.

Wolverine is a manufacturer of children's toys and games. In 1925 Benjamin F. Bain owned substantially all its stock and he also owned three factory

buildings which were leased to Wolverine. His widow, now Mrs. Dora Elliott Green, inherited a majority of his Wolverine stock and the buildings. Mrs. Green made several agreements with Lehren and Schmitt looking to their purchase of her shares of Wolverine. Each of these agreements was subsequently cancelled because of the inability of the taxpayers to make the payments called for. In 1937 the corporation made a contract with Mrs. Green by which 1486 shares of Wolverine were to be purchased by the corporation itself. There were stipulations as to manner of payment and the like, not important for our consideration here. The corporation paid no cash dividends during the period 1937 to 1947. But it did make enough profit so that Mrs. Green's stock was paid for according to the terms of the agreement. The result of this ten-year program was to pay off Mrs. Green and leave the corporation with a large number of its own shares in its treasury. It also left Messrs. Schmitt and Lehren in the highly advantageous position of having shares in a corporation which owned all of its own stock except what was held by them. And it left Mrs. Green with cash instead of shares.

Whether this was a plan or not we do not see how the distribution of the common stock held in the treasury in proportion to what the shareholders already owned was a taxable event. During these years when Wolverine was buying its own shares it, of course, was subject to income tax as a corporation. Mrs. Green was subject to tax on whatever profit she made by the sale of these shares to the corporation. But what happened to warrant imposing a tax upon Schmitt and Lehren? If one owns a piece of real estate and, because of its favorable location in a city, the land becomes increasingly valuable over a period of years, the owner is not subject to income taxation upon the annual increase in value. In the same way, if a man owns shares in a corporation which gradually become more valuable through the years he is not taxed because of the increase in value even though he is richer at the end of each year than he was at the end of the year before. If he disposes of that which has increased, of course he must pay tax upon his profit. All of this is hornbook law of taxation; nobody denies it.

But if we take the proposition that increase in value is not a subject for tax until there is some sale or other disposal to make a taxable event, and then add to that the proposition that a stock distribution which does not change any proportional interest is not a taxable event, then it seems to us that we have this case. Schmitt and Lehren undoubtedly became richer because of their ownership of shares in Wolverine, which, for several years at any rate, was a highly prosperous company. They did not become any richer when each got another piece of paper evidencing more shares but not any greater proportional interest in the company's assets than they had before.

Some stress is laid upon the company's purchase, prior to the agreement with Mrs. Green, of the small number of shares held by two employees.[1] These employees had an agreement whereby they could repurchase their shares later and in 1947 did do so. We see the facts. But we do not see any significance that those facts have with regard to the stock distribution to Schmitt and Lehren.

These taxpayers have had the good luck to have something which they own

---

1. At this time, there were several minor stockholders, some of whom were employees. Since Wolverine's earnings were to be used to buy out Mrs. Green, the corporation purchased the shares of these stockholders. Two employees were reluctant to sell, but did so when taxpayers promised that they could buy back the same number of shares after the Green holdings had been acquired. In September, 1947, following the distribution of the treasury stock to taxpayers, these employees were permitted to repurchase their shares at the price previously paid them by the corporation.

become more valuable. When they sell it they will have to pay tax on the profit. But until they do they are in the same situation as anyone who holds an object which gains in value as the years go by. The stock dividend did not change the situation.

The judgment of the Tax Court will be reversed.

McLAUGHLIN, Circuit Judge.

I dissent from the majority view for the reasons so admirably expressed in the opinion of Judge LeMire for the Tax Court in this case, 20 T.C. 352.