**Elizabeth N. B. FERRO, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 12032.

United States Court of Appeals Third Circuit.

Argued Dec. 20, 1956.

Decided March 20, 1957.

George F. Shinehouse, Jr., Philadelphia, Pa. (Albert Barnes Zink, Philadelphia, Pa., on the brief), for petitioner.

Carolyn R. Just, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This petition for review presents for our consideration another of the countless factual situations which give rise to the question of whether a certain redemption of stock constitutes a constructive dividend under Section 115(g) of the Internal Revenue Code of 1939.

David A. Ferro (hereinafter called "petitioner") and his wife, Elizabeth N. B. Ferro, duly filed a joint income tax return for 1950.[1] The Commissioner of Internal Revenue determined a deficiency of $7,692.18 in their return on the basis of the following facts:

Montgomery, Inc., a Pennsylvania corporation, operated a retail clothing store in Jenkintown, Pennsylvania. On November 27, 1933, the stockholders resolved to liquidate the corporation because of its financial difficulties, and adopted their original plan of liquidation. This plan failed to produce assets sufficient to meet the corporation's outstanding indebtedness. The principal stockholders of Montgomery, Inc., were petitioner Ferro, Edward H. Thaete, and Henry C. Gibson. The petitioner pro-

---

[1]. David A. Ferro died on November 14, 1954. The proceedings were continued in the name of Elizabeth N. B. Ferro, his widow.

posed an alternate plan to the other stockholders in order that the corporation might continue business. Pursuant to this plan, on March 14, 1934, all of the stockholders surrendered their common and preferred stock to the corporation, and petitioner Ferro purchased all of the common stock for $15,000. Thaete owned a sizable amount of stock and agreed to surrender it to the corporation only after petitioner Ferro signed the following agreement, dated March 15, 1934, contemplating a division of future profits:

"* * * I agree that all future profits accruing to me thru my interest in Montgomery, Inc., shall be shared with you on a fifty-fifty (50-50) basis, after debt of $15,000.00, incurred as of March 17, 1934, is paid and satisfied.

"Yours very truly,
"[Signed] David A. Ferro."

Montgomery, Inc., eventually prospered, and as of June 1, 1949, aggregate dividends of $15,000 were paid to petitioner. It was at that point that Thaete initiated negotiations with the petitioner in an effort to settle his rights arising from the March 15, 1934, agreement. Thaete ultimately agreed to accept $20,000 from Ferro in full settlement of the contract. The following procedure for the payment of the $20,000 was adopted at the suggestion of petitioner's accountant in an endeavor to lessen the amount of income tax petitioner would be required to pay. It was agreed that 241 shares of stock had the value of $20,000. Ferro conveyed this number of shares to Thaete who executed to Ferro a release from the 1934 agreement. Thaete immediately indorsed the certificates over to the corporation, returned them to the petitioner, and received his payment from the corporation, partly cash and the remainder by promissory note. Throughout all of the time pertinent to this petition, the accumulated earnings and profits of the corporation were in excess of $20,000.

On the basis of the above transaction, the Tax Court affirmed the Commissioner's determination that Ferro constructively received a "taxable dividend" within the purview of Section 115(g) of the Internal Revenue Code of 1939, which reads as follows:

"(g) Redemption of stock.

"(1) In general. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend." 26 U.S.C. 1952 ed., § 115(g).

The Tax Court concluded that the payment of $20,000 by the corporation to Thaete in reality discharged an obligation of petitioner to Thaete in the same amount, and consequently petitioner received a distribution "essentially equivalent" to a taxable dividend.

The petitioner urges that two separate transactions occurred. First, Ferro transferred 241 shares of stock to Thaete for the release of his rights under the 1934 agreement; and second, Thaete sold the stock to the corporation for $20,000. Viewed in this light, it is argued, Ferro did not receive a taxable dividend from the stock redemption.

We have always held that the issue of whether a corporate distribution was essentially equivalent to a taxable dividend was a question of fact to be determined by the Tax Court, and reviewable by us only to the extent of ascertaining whether substantial evidence exists in the record to support that determination and that the determination was made upon the application of the correct criteria. Commissioner of Internal Revenue v. Straub, 3 Cir., 1935, 76 F.2d 388, 389; Brown v. Commissioner of Internal Revenue, 3 Cir., 1935, 79 F.2d 73, 74;

Bazley v. Commissioner of Internal Revenue, 3 Cir., 1946, 155 F.2d 237, 239–240. See also Smith v. United States, 3 Cir., 1941, 121 F.2d 692, 695. The other circuits are practically in unanimous accord.[2]

There is no all-inclusive rule as to when a distribution in connection with a redemption of stock is essentially equivalent to a taxable dividend within the meaning of Section 115(g). The guiding principle, however, involves an examination of the relevant circumstances to determine whether the distribution in any particular case has the "net effect" of the distribution of a true dividend. Flanagan v. Helvering, 1940, 73 App.D.C. 46, 116 F.2d 937, 939–940; Bazley v. Commissioner of Internal Revenue, 3 Cir., 1946, 155 F.2d 237, 240–241; Smith v. United States, 3 Cir., 1941, 121 F.2d 692, 696.

The relevant circumstances to consider in determining the net effect of the distribution include the following: (1) whether the distribution resulted in any substantial change in ownership or control; (2) whether there was any contraction in corporate business; (3) whether the action was initiated by the corporation or by a shareholder; (4) whether there were earnings or profits available and the effect on corporate finances as compared with a regular dividend.

The declaration of a true dividend leaves the ownership and control of a corporation unaffected. Where a distribution of corporate assets likewise leaves proportionate interests unchanged, that circumstance has been termed "the most significant factor in finding dividend equivalence."[3] Our own cases have consistently reflected the importance of substantially identical holdings before and after the distribution in question. Brown v. Commissioner of Internal Revenue, 3 Cir., 1935, 79 F.2d 73, 74; Smith v. United States, 3 Cir., 1941, 121 F.2d 692, 695; Boyle v. Commissioner of Internal Revenue, 3 Cir., 187 F.2d 557, 560, certiorari denied, 1951, 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618. See also Treas.Reg. 111, § 29.115–9. In this case, before the distribution of $20,000 to Thaete, Ferro owned 100% of the stock of Montgomery, Inc. After the distribution he owned exactly the same proportion. Of course, the fact that his holdings were reduced by 241 shares is immaterial, in view of the fact that he

2. Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342, 345, certiorari denied 1934, 293 U.S. 570, 55 S.Ct. 100, 79 L.Ed. 669; Keefe v. Cote, 1 Cir., 1954, 213 F.2d 651, 656; Commissioner of Internal Revenue v. Roberts, 4 Cir., 1953, 203 F.2d 304, 307; Commissioner of Internal Revenue v. Sullivan, 5 Cir., 1954, 210 F.2d 607, 609; Woodworth v. Commissioner of Internal Revenue, 6 Cir., 1955, 218 F.2d 719, 724; Commissioner of Internal Revenue v. Babson, 7 Cir., 70 F.2d 304, 306, certiorari denied, 1934, 293 U.S. 571, 55 S.Ct. 107, 79 L.Ed. 669; Randolph v. Commissioner of Internal Revenue, 8 Cir., 76 F.2d 472, 476, certiorari denied Helvering v. Randolph, 1935, 296 U.S. 599, 56 S.Ct. 116, 80 L.Ed. 425; Hirsch v. Commissioner of Internal Revenue, 9 Cir., 1941, 124 F.2d 24, 28; Jones v. Dawson, 10 Cir., 1945, 148 F.2d 87, 90.

The Second Circuit, however, has recently held that "the question whether a partial liquidation is 'essentially equivalent' to a dividend, involving as it does the application of a statutory rule to found facts, is a question of law * *," Northup v. United States, 2 Cir., 1957, 240 F.2d 304, 307. Our research discloses that this is the only circuit which holds this view. It is apparently in conflict with the earlier Second Circuit decision of Kirschenbaum v. Commissioner of Internal Revenue, 2 Cir., 155 F.2d 23, 24, 170 A.L.R. 1389, certiorari denied 1946, 329 U.S. 726, 67 S.Ct. 75, 91 L.Ed. 628, which stated that the issue of dividend equivalence did not raise any questions of law susceptible of review. See Woodworth v. Commissioner of Internal Revenue, supra.

3. Nolan, John S., The Uncertain Tax Treatment of Stock Redemptions: A Legislative Proposal, 65 Harv.L.Rev. 255, 261 (1951); Commissioner of Internal Revenue v. Roberts, 4 Cir., 1953, 203 F.2d 304, 306. See also dissenting opinion in Commissioner of Internal Revenue v. Sullivan, 5 Cir., 1954, 210 F.2d 607, 611.

was still the sole owner. Commissioner of Internal Revenue v. Roberts, 4 Cir., 1953, 203 F.2d 304, 306. From the standpoint of proportionate ownership, then, the distribution here involved was "essentially equivalent" to a taxable dividend.

■ The absence of a contraction in corporate operations indicates the distribution is more in the nature of a dividend than a partial liquidation. Boyle v. Commissioner of Internal Revenue, 187 F.2d at page 561. There is nothing in the present record which indicates a contraction in the business of Montgomery, Inc.

The plan for paying Thaete in stock and having it subsequently redeemed came from petitioner Ferro for his own personal benefit. Where no justifiable corporate reason exists for the redemption which benefits the shareholder who initiates it, our court has found the distribution equivalent to a taxable dividend. Smith v. United States, 121 F.2d at page 695.

Finally, during the period of distribution, Montgomery, Inc., always had profits and earnings in excess of $20,000. The distribution of $20,000 to Thaete had precisely the same effect upon corporate finances as a regular dividend would have had—the earnings and profits were reduced $20,000 without an accompanying reduction of control or ownership. See Boyle v. Commissioner of Internal Revenue, 187 F.2d at page 561.

■ The conclusion inescapably follows that by every criterion the distribution in question was equivalent to a taxable dividend within the meaning of Section 115(g).

The Tax Court relied in part upon this passage from Wall v. United States, 4 Cir., 1947, 164 F.2d 462, 464:

" * * * It cannot be questioned that the payment of a taxpayer's indebtedness by a third party pursuant to an agreement between them is income to the taxpayer. Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; United States v. Boston & Maine R. Co., 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929; Old Colony Trust Co. v. Commissioner [of Internal Revenue], 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918. The transaction is regarded as the same as if the money had been paid to the taxpayer and transmitted by him to the creditor; and so if a corporation, instead of paying a dividend to a stockholder, pays a debt for him out of its surplus, it is the same for tax purposes as if the corporation pays a dividend to a stockholder, and the stockholder then utilizes it to pay his debt."

The Tax Court found that Ferro was "indebted" to Thaete for $20,000. In his strenuous denial of the existence of such a debt, petitioner insists that the 1949 transaction with Thaete involved two separate events; namely, Ferro's conveyance of 241 shares for Thaete's release, and the transfer of 241 shares by Thaete to the corporation. But even if it were one transaction, the petitioner urges that the $20,000 was not given Thaete as payment of a "debt" from Ferro, but rather as liquidation of the interest Thaete continued to hold in Montgomery, Inc., by virtue of the 1934 agreement. This contention flies in the face of fact. In 1934 Thaete and the other shareholders gave up all the interest they had in the corporation in consideration of Ferro's contribution of $15,000 to the business. The agreement in 1934 whereby Ferro agreed to give Thaete 50% of "all future profits accruing to me thru my interest in Montgomery, Inc." indicates that only Ferro had an interest in the corporation, and that Thaete did not. Petitioner's argument that Ferro did not owe Thaete any "debt" in 1949 is not so much without merit as it is immaterial. Certainly an obligation of some sort was owing from Ferro to Thaete; whether it was in legal contemplation a "debt" or not is of no importance in view of the fact that it was

a personal [4] liability which required $20,-000 to discharge. We refuse to engage in a metaphysical discussion of semantics in an endeavor to adopt a factual inference proposed by a litigant, when the judicial eye should be "cast directly and primarily upon the evidence in support of those [inferences] made by the Tax Court." Commissioner of Internal Revenue v. Scottish American Investment Co., 1944, 323 U.S. 119, 124, 65 S.Ct. 169, 171, 89 L.Ed. 113. Corporate money was used to discharge an obligation of Ferro, and the effect was essentially equivalent to a regular dividend.

The decision of the Tax Court will be affirmed.

4. The personal nature of the obligation is indicated by all the circumstances. The agreement of 1934 was signed by Ferro personally. The record discloses that Thaete's son testified that Thaete looked to Ferro personally for payment. The substance of the transaction also indicates that the payment came from Ferro himself.