Joseph R. HOLSEY and Eleanor T. Holsey, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12548.

United States Court of Appeals Third Circuit.

Argued June 3, 1958.

Decided Sept. 3, 1958.

Milton A. Dauber, Jersey City, N. J. (Carpenter, Bennett, Beggans & Morrissey, Jersey City, N. J., Laurence Reich, Jersey City, N. J., on the brief), for petitioners.

Myron C. Baum, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

James B. Lewis, New York City, Arthur Kalish, New York City, on the brief, amici curiae.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

This is a petition to review a decision of the Tax Court. The petitioners, husband and wife, filed a joint return and the case involves their income tax liability for the year 1951. The income in controversy is that of the husband alone, however, and he will accordingly be referred to as the taxpayer. The facts as found by the Tax Court, some of which were stipulated, may be summarized as follows:

J. R. Holsey Sales Company, a New Jersey corporation, was organized on April 28, 1936, as an Oldsmobile dealership. Taxpayer has been president and a director of the company since its organization. Only 20 shares were issued out of the 2,500 shares of no par value stock authorized; these 20 shares were issued to Greenville Auto Sales Company, a Chevrolet dealership, in exchange for all of the latter's right, title, and interest to the Oldsmobile franchise and other assets with respect to the franchise which had been owned and operated by the Greenville Company. The 20 shares issued were assigned a value of $11,000. Taxpayer's father, Charles V. Holsey, in 1936, owned more than two-thirds of the outstanding stock of the Greenville Company, and taxpayer was vice-president and a director of that corporation.

On April 30, 1936, taxpayer acquired from the Greenville Company an option to purchase 50% of the outstanding shares of the Holsey Company for $11,000, and a further option to purchase, within ten years after the exercise of the first option, all the remaining shares for a sum to be agreed upon. The Greenville Company owned all of the outstanding stock of the Holsey Company from its organization in 1936 until November, 1939, when taxpayer exercised his first option and purchased 50% of the outstanding stock of the Holsey Company for $11,000.

On June 28, 1946, the further option in favor of taxpayer was revised. Under the terms of the revised option, taxpayer was granted the right to purchase the remaining outstanding shares of the Holsey Company at any time up to and including June 28, 1951, for $80,000. The revised option was in favor of taxpayer individually and was not assignable by him to anyone other than a corporation in which he owned not less than 50% of the voting stock. On the date of the revision of this option, taxpayer's father owned 76% of the stock of the Greenville Company and taxpayer was a vice-president and director of that corporation. On April 28, 1948, the Holsey Company declared a 3-for-1 stock dividend and the common stock was allocated

a value of $750 per share. This stock dividend increased the outstanding stock to 80 shares which was held in equal amounts by taxpayer and the Greenville Company.

On January 19, 1951, taxpayer assigned his revised option to the Holsey Company; on the same date the Holsey Company exercised the option and paid the Greenville Company $80,000 for the stock held by it. This transaction resulted in taxpayer becoming the owner of 100% of the outstanding stock of the Holsey Company. In his income tax return for the year 1951, taxpayer gave no effect to this transaction.

The principal officers and only directors of the Holsey Company from April 28, 1936, to December 31, 1951, were taxpayer, his brother, Charles D. Holsey, and their father, Charles V. Holsey. On January 19, 1951, when the revised option was exercised, the earned surplus of the Holsey Company was in excess of $300,000.

The Oldsmobile franchise, under which the Holsey Company operated, was a yearly contract entered into by the Corporation and the manufacturer in reliance upon the personal qualifications and representations of taxpayer as an individual. It was the manufacturer's policy to have its dealers own all of the stock in dealership organizations.

The Commissioner determined that the effect of the transaction of January 19, 1951, wherein the Holsey Company paid $80,000 to the Greenville Company for 50% of the outstanding stock of the Holsey Company, constituted a dividend to taxpayer, the remaining stockholder. The Commissioner therefore asserted a deficiency against taxpayer in the sum of $41,385.34. The Tax Court sustained the Commissioner. 28 T.C. 962.

■ The question presented for decision in this case is whether the Tax Court erred in holding that the payment by the Holsey Company of $80,000 to the Greenville Company for the purchase from that company of its stock in the Holsey Company was essentially equivalent to the distribution of a taxable dividend to the taxpayer, the remaining stockholder of the Holsey Company. To determine that question we must begin with the applicable statute, Section 115 of the Revenue Act of 1939, as amended, 26 U.S.C.A. § 115, the relevant portions of which are as follows:

"(a) Distribution by corporations. The term 'dividend' when used in this chapter (except in section 201(c) (5), section 204(c) (11) and section 207(a) (2) and (b) (3) (where the reference is to dividends of insurance companies paid to policy holders)) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

\* \* \* \* \* \*

"(b) Source of distributions. For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. \* \* \*

\* \* \* \* \* \*

"(g) Redemption of stock.

"(1) In general. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall

be treated as a taxable dividend. * * * "

■ It will be observed that section 115(a) defines a dividend as a distribution made by a corporation "to its shareholders". Accordingly unless a distribution which is sought to be taxed to a stockholder as a dividend is made to him or for his benefit it may not be regarded as either a dividend or the legal equivalent of a dividend. Here the distribution was made to the Greenville Company, not to the taxpayer. This the Government, of course, concedes but urges that it was made for the benefit of the taxpayer. It is true that it has been held that a distribution by a corporation in redemption of stock which the taxpayer stockholder has a contractual obligation to purchase is essentially the equivalent of a dividend to him since it operates to discharge his obligation. Wall v. United States, 4 Cir., 1947, 164 F.2d 462; Ferro v. Commissioner of Internal Revenue, 3 Cir., 1957, 242 F.2d 838; Zipp v. Commissioner of Internal Revenue, 6 Cir., 1958, 259 F.2d 119. But where, as here, the taxpayer was never under any legal obligation to purchase the stock held by the other stockholder, the Greenville Company, having merely an option to purchase which he did not exercise but instead assigned to the Holsey Company, the distribution did not discharge any obligation of his and did not benefit him in any direct sense.

It is, of course, true that the taxpayer was benefited indirectly by the distribution. The value of his own stock was increased, since the redemption was for less than book value, and he became sole stockholder. But these benefits operated only to increase the value of the taxpayer's stock holdings; they could not give rise to taxable income within the meaning of the Sixteenth Amendment until the corporation makes a distribution to the taxpayer or his stock is sold. Eisner v. Macomber, 1920, 252 U.S. 189, 40 S. Ct. 189, 64 L.Ed. 521; Schmitt v. Commissioner of Internal Revenue, 3 Cir., 1954, 208 F.2d 819. In the latter case in a somewhat similar connection this court said (at page 821):

"During these years when Wolverine was buying its own shares it, of course, was subject to income tax as a corporation. Mrs. Green was subject to tax on whatever profit she made by the sale of these shares to the corporation. But what happened to warrant imposing a tax upon Schmitt and Lehren? If one owns a piece of real estate and, because of its favorable location in a city, the land becomes increasingly valuable over a period of years, the owner is not subject to income taxation upon the annual increase in value. In the same way, if a man owns shares in a corporation which gradually become more valuable through the years he is not taxed because of the increase in value even though he is richer at the end of each year than he was at the end of the year before. If he disposes of that which has increased, of course he must pay tax upon his profit. All of this is hornbook law of taxation; nobody denies it."

We think that the principle thus stated is equally applicable here. Indeed the Tax Court itself has so held in essentially similar cases. S. K. Ames, Inc., v. Commissioner, 1942, 46 B.T.A. 1020; Fred F. Fischer v. Commissioner, 1947, 6 T.C.M. 520.

The question whether payments made by a corporation in the acquisition and redemption of its stock are essentially equivalent to the distribution of a taxable dividend has been often before the courts and certain criteria have been enunciated. The most significant of these is said to be whether the distribution leaves the proportionate interests of the stockholders unchanged as occurs when a true dividend is paid. Ferro v. Commissioner of Internal Revenue, 3 Cir., 1957, 242 F.2d 838, 841. The application of that criterion to the facts of this case compels the conclusion that in the absence of a direct pecuniary bene-

fit to the taxpayer the Tax Court erred in holding the distribution in question taxable to him. For in his case prior to the distribution the taxpayer and the Greenville Company each had a 50% interest in the Holsey Company whereas after it was over the taxpayer had 100% of the outstanding stock and the Greenville Company none.

The Government urges the lack of a corporate purpose for the distribution and the taxpayer seeks to establish one. But we do not consider this point for, as we have recently held, "It is the effect of the redemption, rather than the purpose which actuated it, which controls the determination of dividend equivalence." Kessner v. Commissioner of Internal Revenue, 3 Cir., 1957, 248 F.2d 943, 944. Nor need we discuss the present position of the Government that the transaction must be treated as a sham and the purchase of the stock as having been made by the taxpayer through his alter ego, the Holsey Company. For the Tax Court made no such finding, doubtless in view of the fact that at the time the taxpayer owned only 50% of the stock and was in a minority on the board of directors. On the contrary that court based its decision on the benefit which the distribution by the corporation to the Greenville Company conferred upon the taxpayer, which it thought gave rise to taxable income in his hands.

For the reasons stated we think that the Tax Court erred in its decision. The decision will accordingly be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

McLAUGHLIN, Circuit Judge (dissenting).

I think that the net effect of the facile operation disclosed in this case amounts to the distribution of a taxable dividend to the taxpayer. I do not think that the Schmitt decision controls here. Quite the contrary to the Schmitt facts, this taxpayer himself acquired a valuable option to buy the shares and solely on the theory of a gift of the option rights would make the corporation the true purchaser. I agree with the Tax Court that "The assignment of the option contract to J. R. Holsey Sales Co. was clearly for the purpose of having that company pay the $80,000 in exercise of the option that was executed for petitioner's personal benefit. The payment was intended to secure and did secure for petitioner exactly what it was always intended he should get if he made the payment personally, namely, all of the stock in J. R. Holsey Sales Co."

I would affirm the Tax Court decision.