321 F.2d 598
 COMMISSIONER OF INTERNAL REVENUE, Petitioner in No. 13,785,
v.
Robert MAKRANSKY, Executor of the Estate of Harry Makransky, and Helen Makransky.
COMMISSIONER OF INTERNAL REVENUE, Petitioner in Nos. 13,786, 13,787,
v.
Emanuel MOSS and Sylvia Moss.
COMMISSIONER OF INTERNAL REVENUE, Petitioner in Nos. 13,788, 13,789,
v.
Hilda B. SCHNEIDER.
TRUST Under Deed of Joseph BINENSTOCK (Deceased), Girard Trust Corn Exchange Bank, Theodora B. Jacobs, Sylvia B. Moss, Hilda B. Schneider (formerly Hilda B. Raines), Helen B. Makransky, John Tait and Albert Barnes Zink, Trustees, Petitioners in Nos. 13,790, 13,791
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner in Nos. 13,792, 13,793,
v.
Allen C. JACOBS and Theodora B. Jacobs.
 Nos. 13785-13793.
 United States Court of Appeals Third Circuit.
 Argued January 7, 1963.
 Decided July 3, 1963.
 
 Albert Barnes Zink, Philadelphia, Pa., for Binenstock's trust and others (George F. Shinehouse, Jr., Philadelphia, Pa., on the brief).
 Bernard Wolfman, Philadelphia, Pa., for respondents Helen Makransky and Robert Makransky, Exr. of Estate of Harry Makransky (Jerome Kurtz, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., on the brief).
 Herman Krekstein, Philadelphia, Pa., on the brief for respondents Emanuel and Sylvia Moss and Hilda B. Schneider.
 John B. Jones, Jr., Dept. of Justice, Washington, D. C., for Commissioner of Internal Revenue (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Harold M. Seidel, Attys., Dept. of Justice, Washington, D. C., on the brief).
 Before KALODNER, HASTIE and GANEY, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 The Tax Court has imposed income tax liability upon a trust for certain distributions of corporate earnings of J. A. Dougherty & Sons, Inc., ("Dougherty, Inc."), while refusing to treat these disbursements as yielding taxable income to the beneficiaries of the trust or the settlor. 36 T.C. 446. The trustees have filed petitions for review on behalf of the trust and the Commissioner has filed protective cross-petitions from the decisions that the beneficiaries are not taxable.
 
 
 2
 The trust was created gratuitously in 1947 by an indenture of the settlor, Joseph Binenstock. The beneficiaries are his children, and the corpus is all of the issued and outstanding stock of Dougherty, Inc., an incorporated business theretofore owned entirely by Binenstock. The indenture expressly provides that the trust shall be irrevocable.
 
 
 3
 When this trust was created, there was pending against Binenstock a lawsuit by the Commonwealth of Pennsylvania for a large sum of money. The creation of the trust and transfer to it of the Dougherty, Inc., stock rendered Binenstock insolvent. He continued to be insolvent in 1950, when the Commonwealth prevailed in the lawsuit, recovering a judgment of almost $865,000 against him.
 
 
 4
 Immediately thereafter, the Commonwealth threatened to sue under the Pennsylvania Uniform Fraudulent Conveyance Act, 39 P.S. §§ 351-363, to set the trust aside and appropriate the Dougherty stock to the satisfaction of its judgment against Binenstock. In these circumstances the interested parties sought to achieve a settlement under which the Commonwealth would receive, in installments over a three-year period, $756,000 in full satisfaction of its judgment. Since Binenstock had no assets or resources which would yield so large a sum, it became necessary to involve the trust and Dougherty, Inc., in the settlement arrangement. It was proposed that the trustees agree to keep the assets of the trust intact pending full payment of the $756,000 and that the trustees further agree not to resist an action to set the trust aside if the $756,000 should not be paid. It was also proposed that Dougherty, Inc., lend Binenstock $756,000 in installments, with appropriate arrangements to assure the payment of this money to the Commonwealth.
 
 
 5
 The proposals affecting the corporate assets which constituted the trust corpus were submitted by the trustees to the Orphans' Court for approval. Binenstock and the beneficiaries filed waivers of objection. The court approved the proposed diversion of assets of the trust, acting on a report of a master finding that the proposed agreement and corporate loan were in the best interest of the trust and its beneficiaries because of the danger that otherwise the Commonwealth would have the trust set aside. In making this recommendation the master noted Binenstock's insolvency and stated that the transaction would deplete the trust estate.
 
 
 6
 The Commonwealth, the trustees and Binenstock then entered into the proposed settlement agreement. Dougherty, Inc., undertook to lend Binenstock $756,000 in installments as needed to pay the Commonwealth, with Binenstock surrendering to the corporation as security all of his substantial assets, aggregating $130,000 in value.
 
 
 7
 The taxable years 1952 to 1956, inclusive, are involved in this proceeding. Binenstock died in 1952. During the taxable years the corporation paid to Binenstock, and after his death to his personal representative, most of the money required to satisfy the Commonwealth's claim, and these disbursements were so used. The sums thus distributed by Dougherty, Inc., over a period of several years were less than the available earnings of the corporation. It is the tax status of these distributions of corporate funds, minus the value of the collateral posted by Binenstock, with which this case is concerned.
 
 
 8
 The Tax Court treated these distributions as corporate dividends taxable to the trust as sole stockholder. Challenging this conclusion, the appellants first urge that the Tax Court erred in refusing to recognize the $756,000 as being in substance what it was in form, a loan from the corporation to Binenstock.
 
 
 9
 While in many cases various factors must be weighed in determining for income tax purposes the true character of a purported loan, there is one essential without which a transaction cannot be recognized as a loan. The parties must have entered into the transaction with the intention that the money advanced be repaid. Spheeris v. Commissioner, 7th Cir. 1960, 284 F.2d 928, cert. denied, 1961, 366 U.S. 944, 81 S.Ct. 1673, 6 L. Ed.2d 855; Clark v. Commissioner, 9th Cir. 1959, 266 F.2d 698; Regensburg v. Commissioner, 2d Cir. 1944, 144 F.2d 41, cert. denied, 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625; Saigh, 1961, 36 T.C. 395, 419-22; 1 Mertens, Federal Income Taxation, 1962 ed., § 9.21, cases cited in note 41.
 
 
 10
 In this case it does not appear and, indeed, it is incredible that anyone anticipated that the difference between the sums distributed by the corporation and the value of the collateral deposited by Binenstock should ever be repaid. While the Orphans' Court was asked to approve this transaction in the form of a loan, and did so, that court acted pursuant to a master's report which made it clear that the difference between the sum to be distributed and the amount of the collateral to be supplied by Binenstock would represent a depletion of the assets of the corporation and that such a loss was acceptable only because, as between the destruction of the trust and this depletion of its assets, the latter was, in the master's words, "much the lesser of the two evils".[1]
 
 
 11
 Moreover, all of the parties were aware that Binenstock was insolvent, advancing in years[2] and without present or prospective means of repaying any large sum of money to the corporation. His only income was a small salary and he was assigning as collateral all of his assets which might otherwise have become sources of additional income.
 
 
 12
 The corporation's undertaking and its action with reference to advances after Binenstock's death were also significant. In promising to supply money over a period of years for the settlement of the Commonwealth's claim, the corporation agreed that these payments were not to be interrupted or terminated in the event of Binenstock's death. Binenstock did die about a year after this agreement. Thereafter, the company advanced over $200,000 to his estate for payments to the Commonwealth in accordance with the original undertaking. When these payments were made there was not even an insolvent Binenstock to whom the corporation could look for repayment.
 
 
 13
 In the light of this total picture the Tax Court rightly described Binenstock and his estate as mere conduits through which the corporation made payments to the Commonwealth in settlement of its claim. The casting of such a transaction in the form of a loan to Binenstock cannot prevent its characterization for tax purposes in accordance with the conduct of the parties and their manifest understanding.
 
 
 14
 This brings us to a consideration of the Tax Court's affirmative conclusion that the distributions of corporate funds to satisfy the Commonwealth's claim were taxable as informal corporate dividends. The Internal Revenue Code defines "dividend" in language requiring the satisfaction of four criteria: There must be (1) a "distribution" of property (2) "made by a corporation" (3) "to its shareholders" (4) "out of its earnings and profits". Int.Rev.Code of 1954, § 316 (a); Int.Rev.Code of 1939, § 115(a), ch. 2, 53 Stat. 46, as amended. It should be observed that these criteria do not include a requirement that the distribution be made pursuant to a formal declaration of a dividend. Informal withdrawals and distributions, although characterized by the parties as other than dividends, must be taxed as dividends if the statutory criteria are met. Clark v. Commissioner, supra; Regensburg v. Commissioner, supra; Allen v. Commissioner, 1st Cir. 1941, 117 F.2d 364; Wiese v. Commissioner, 8th Cir.1938, 93 F.2d 921, cert. denied, 304 U.S. 562, 58 S.Ct. 944, 82 L. Ed. 1529; Christopher v. Burnet, 1931, 60 App.D.C. 365, 55 F.2d 527. Three of the listed criteria need not detain us. The first creates no problem once it is determined that the disbursement of corporate funds was not a loan. The second and fourth are satisfied by the Tax Court's holding that, in the absence of evidence to the contrary from the taxpayers, on whom the burden of proof lies, it will be assumed that the payments made to Binenstock and his estate were from available existing earnings and profits of the corporation. R. M. Walker, 1932, 26 B.T.A. 494, appeal dismissed, 9th Cir. 1935, 74 F.2d 1022. It remains to consider whether in legal contemplation the distribution of corporate earnings was "to its shareholders".
 
 
 15
 The Tax Court reasoned that the payments were made to the shareholder trust in that they were made at the request of the trustees "for the benefit" of the trust. 36 T.C. at 454. The trust-benefiting objective was the preservation of the integrity of the trust against the effort of the Commonwealth to reach its assets which, otherwise, would probably have succeeded.
 
 
 16
 The government urges that this analysis is supported by cases holding that a taxpayer receives income when a corporation of which he is a shareholder uses its funds to discharge a debt owed by the taxpayer to a third person. See Sachs v. Commissioner, 8th Cir.1960, 277 F.2d 879, cert. denied, 364 U.S. 833, 81 S.Ct. 63, 5 L.Ed.2d 59; Wall v. United States, 4th Cir.1947, 164 F.2d 462; cf. Old Colony Trust Co. v. Commissioner, 1929, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Hash v. Commissioner, 4th Cir.1959, 273 F.2d 248. The rationale of these cases is that income includes not only direct distributions to a shareholder, but also distributions to others for his benefit, including the payment of a debt, which is legally no less beneficial than the payment of cash to the debtor.[3] By the same reasoning, other cases on which the government relies have held that a shareholder who causes a corporation for no proper business purpose, to transfer earnings to a second corporation in which the shareholder is interested receives income in the amount of the funds transferred. Biltmore Homes, Inc. v. Commissioner, 4th Cir.1961, 288 F.2d 336, cert. denied, 368 U.S. 825, 82 S.Ct. 46, 7 L.Ed.2d 30; cf. Helvering v. Gordon, 8th Cir.1937, 87 F. 2d 663; Lonsdale v. Commissioner, 8th Cir.1929, 32 F.2d 537, cert. denied, Lonsdale v. Lucas, 280 U.S. 575, 50 S.Ct. 30, 74 L.Ed. 627.
 
 
 17
 On the other hand, the trustees urge that any such conception of income should be limited in accordance with Ruben v. Commissioner, 8th Cir.1938, 97 F. 2d 926, reversing 36 B.T.A. 604. There, a corporation used its funds to settle a judgment against itself, and thereby relieved the taxpayer, a major shareholder, of secondary liability on the same judgment. The Court of Appeals concluded that the entire transaction, from the incurrence of liability through its discharge with corporate funds, resulted in no gain to the taxpayer. The trustees rely on this case to support their contention that, while each payment to Binenstock or his estate may have resulted in the partial discharge of a contingent claim against the trust assets, the total effect of the payments was not to increase the net worth of the trust, because each payment also resulted in a corresponding diminution of the book value of the stock owned by the trust.
 
 
 18
 The trustees' argument proves too much: its conclusion would seem to follow even when a corporation pays a formally declared dividend in cash to its shareholders. It is also inconsistent with the "assignment of income" cases, following principles enunciated in Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, which hold that a dominant stockholder is taxable on a distribution of corporate earnings made at his behest to a third person for some purpose he wished to serve, although he himself received no economic gain. See Byers v. Commissioner, 8th Cir.1952, 199 F.2d 273, cert. denied, 1953, 345 U.S. 907, 73 S.Ct. 646, 97 L.Ed. 1343; Minnie F. Lasker, 1952, 11 CCH Tax Ct. Mem. 50; cf. Whitehead v. Commissioner, 4th Cir. 1945, 148 F.2d 718; Clark v. Commissioner, 3d Cir.1936, 84 F.2d 725. The fundamental error in the trustees' argument is its failure to recognize the distinction between the concepts of gain and the realization of gain. See Magill, Taxable Income, rev. ed. 1945, pp. 38-43. The corporation made payments through Binenstock and his estate to the Commonwealth out of undistributed earnings and profits. These earnings and profits, as they originally accumulated, resulted in corresponding gains to the trust through the appreciation of the shares of stock owned by the trust. These gains were not taxed as income to the trust, however, because in legal conception they had not yet been "realized". See Schmitt v. Commissioner, 3d Cir.1954, 208 F.2d 819, 821. The decisive question on this aspect of the case is whether payments by the corporation to satisfy the Commonwealth's claim were the legal equivalent of payments of cash to the trust in the sense that such payments constituted a realization of previous accretions to the value of stock owned by the trust. Cf. United States v. Davis, 1962, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335. The cases already cited in support of the Tax Court's decision require an affirmative answer to that question. Any contrary intimation in the Ruben case, upon which the trustees rely, must be rejected.[4]
 
 
 19
 We conclude that the payments at issue exhibited the essential characteristics of a taxable dividend.
 
 
 20
 Alternatively, the trustees urge that the distribution of corporate funds, if taxable at all, should be treated under the so-called "grantor-trust" rules of the Internal Revenue Code,[5] as income of Binenstock, a grantor to whom earnings of trusted property have been distributed and, presumably, as income of his estate to the extent that payments were made after his death.
 
 
 21
 First, it is argued that we are dealing with income taxable to the grantor under section 167(a) of the 1939 Code and section 677(a) of the 1954 Code which incorporates and broadens the earlier section. Both sections make the grantor taxable on trust income which, in the language of section 167(a) (2), "may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor". But it is clear on the face of the statute and in the adjudicated cases that this language applies only where the trust indenture itself gives the grantor, or someone not having an interest adverse to his, discretionary power to divert trust income to him. Compare De Amodio v. Commissioner, 3d Cir.1962, 299 F.2d 623, and Helvering v. Evans, 3d Cir.1942, 126 F.2d 270, cert. denied, 317 U.S. 638, 63 S. Ct. 30, 87 L.Ed. 514, with Commissioner v. Waterbury, 2d Cir.1938, 97 F.2d 383, cert. denied, 305 U.S. 638, 59 S.Ct. 105, 83 L.Ed. 411. The trust indenture here does not reserve or confer any such power.
 
 
 22
 The corresponding section 677(a) of the 1954 Code specifies an additional situation in which trust income is taxable to the grantor, namely, where trust income "is" in fact distributed to the grantor "without the approval or consent of any adverse party". In the present case, trust income was in fact distributed to the grantor, not in the exercise of a power reserved to him in the terms of the trust or in fulfillment of an obligation to him notwithstanding the wishes of the beneficiaries, but pursuant to the request or consent of all of the adverse parties. Thus, an explicit requirement of the statute has not been met.[6] No case has been found in which section 677(a) has been applied to an agreed distribution thus made to a grantor without supporting sanction in the terms of the trust.[7]
 
 
 23
 A contrary result would permit tax avoidance through income-splitting for which no sanction appears in the "grant-or-trust" sections. It would permit any inter vivos trust, which, in a taxable year, has earned more income than its grantor, to minimize the federal income taxes payable on the aggregate income of the grantor, the trust and the beneficiaries, by paying current trust income to the grantor, with the consent of the beneficiaries. This risk would be enhanced in a case, such as this, where the grantor and the beneficiaries are the natural objects of one another's generosity.
 
 
 24
 One additional theory of taxation to the grantor merits brief comment. One of the so-called "Clifford" Regulations, promulgated under section 22(a) of the 1939 Code, makes trust income taxable to the grantor "where, under the terms of the trust or the circumstances attendant on its operation, administrative control is exercisable primarily for the benefit of the grantor rather than the beneficiaries of the trust". Among the situations enumerated in the Regulation as exemplifying such administration of a trust for the benefit of the grantor is that in which "the grantor has directly or indirectly borrowed the corpus or income" of the trust. Treas.Reg. 111, § 29.22(a)-21 (e) (3), added by T.D. 5488, 1946-1 Cum. Bull. 22, as amended, T.D. 5567, 1947-2 Cum.Bull. 12; Treas.Reg. 118, § 39.22 (a)-21(e) (1) (iii) (1953). Such borrowing by a grantor is now taxable to him under section 675(3) of the 1954 Code. A regulation adopted under that section, Treas.Reg. § 1.675-1(a), like the original "Clifford" Regulation from which section 675 itself is derived, indicates that the "borrowings" to be taxed to the grantor are transactions evidencing the exercise of administrative control over the trust "primarily for the benefit of the grantor". To the same effect, see H.R.Rep. No. 1337, 83d Cong., 2d Sess., 1954, p. A216; S.Rep. No. 1622, 83d Cong., 2d Sess., 1954, p. 369.
 
 
 25
 Here, though the transactions were in form borrowings by Binenstock, he did not and was not intended to gain anything from them. He was insolvent and the transactions did not improve his circumstances in any significant way. Moreover, he was not permitted to exercise dominion over the sums advanced. As the Tax Court properly found, Binenstock served merely as a conduit through which payments were made to the Commonwealth for the benefit of the trust itself. The statutes and regulations upon which the trustees rely disclose no design to shift taxation from the trust to the grantor where a transaction cast in the form of a loan to the grantor is in substance a distribution of trust income to a third person primarily for the benefit of the trust itself.
 
 
 26
 The Tax Court considered and rejected as lacking support in the record the contention that the income represented by the payments in question was required to be distributed to the beneficiaries and, on that account, was taxable to them and deductible by the trust under sections 162 (b) of the 1939 Code and 651 and 652 of the 1954 Code. 36 T.C. at 455-456. No party urges us to upset this conclusion. We agree with the Tax Court.
 
 
 27
 The decisions of the Tax Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The master's report analyzed the situation in this way:
 "Any loans made by that company to Binenstock, in so far as they are not adequately protected by collateral, will reduce the value of the trust assets. In the master's opinion any security which Binenstock can give for the loans will be insufficient for their repayment in full. Assuming this fact, however, the value of the assets of the Distilling Company are probably sufficient to make the required loans and leave some value in the trust assets. Since Binenstock apparently has no way of raising the money unless the loans are made, the alternative will be a suit by the Commonwealth to set aside the trust, which, if successful, as is probable, will impose upon the Distilling Company a payment of $864,924.21 with interest in a lump sum, entailing no doubt a receivership of the company and the loss of the entire trust estate. Whereas under the settlement there will be a payment of $756,000 in installments over a period of approximately three years, which payments according to a letter to the master from Emanuel Moss, Esq., annexed to this report, the Dougherty Company will be able to meet with substantial assets remaining.
 "The master is of opinion that loans from the Dougherty Company to Binenstock are much the lesser of the two evils, and that the trustees should be authorized to permit them."
 
 
 [2]
 His exact age does not appear in this record, but the master's report to the Orphans' Court in 1951 shows that Binenstock then had an adult grandchild
 
 
 [3]
 The force of these cases is not lessened by the rule of such cases as Conestoga Transp. Co., 1951, 17 T.C. 506, acq., 1952-1 Cum.Bull. 2, cited by the petitioner, holding that no gain is realized by an insolvent taxpayer when he is relieved of a debt which he could not otherwise discharge. We have no such problem here with reference to the trust
 
 
 [4]
 Notwithstanding this failure to distinguish between the concepts of gain and realization of gain, the Ruben decision may well be supportable because the discharge of the shareholder's liability in that case was the result of a payment made for an independent and proper corporate purpose, namely, to discharge the corporation's liability. See Sachs v. Commissioner, supra, 277 F.2d at 883-884; Tucker v. Commissioner, 8th Cir. 1955, 226 F.2d 177. But cf. Holsey v. Commissioner, 3d Cir., 1958, 258 F.2d 865, 869
 
 
 [5]
 Int.Rev.Code of 1954, §§ 671-677; Int. Rev.Code of 1939, §§ 22(a), 166, 167, ch. 2, 53 Stat. 9, 68, as amended; Treas.Reg. 111, § 29.22(a)-21, added by T.D. 5488, 1946-1 Cum.Bull. 19, as amended, T.D. 5567, 1947-2 Cum.Bull. 9; Treas.Reg. 118, § 39.22(a)-21 (1953); see Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. The trustees have not renewed before this court their contention, rejected by the Tax Court, that the trust was revocable within the meaning of sections 166 of the 1939 Code and 676 of the 1954 Code, by virtue of the power of the Commonwealth to reach its assets under the Fraudulent Conveyances Act
 
 
 [6]
 The petitioners point out that this requirement does not appear in the Treasury Regulations promulgated under section 677(a). Treas.Reg. §§ 1.677(a)-1 (b), (d) (1956). But such an omission cannot nullify a plain requirement of the statute, particularly when the legislative history shows that the inclusion of this language was considered and purposeful. See H.R.Rep. No. 1337, 83d Cong., 2d Sess., 1954, p. A217; S.Rep. No. 1622, 83d Cong., 2d Sess., 1954, p. 371, U.S. Code Congressional and Administrative News 1954, pp. 4025, 4629
 
 
 [7]
 We have carefully examined the authorities cited by the trustees and find that in each case the distribution in question was made pursuant to discretionary power or mandatory directions expressly contained in the instrument creating the trust. See Helvering v. Blumenthal, 1935, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390, reversing 2d Cir. 1935, 76 F.2d 507 (trustee directed to apply income to payment of grantor's debt); Douglas v. Willcuts, 1935, 296 U.S. 1, 3, 56 S.Ct. 59, 80 L. Ed. 3 (grantor and beneficiary stipulated that trust provisions to be in full settlement of grantor's alimony obligation); Estate of Sheaffer v. Commissioner, 8th Cir. 1963, 313 F.2d 738, 739 (trustee agreed to pay gift taxes incurred by grantor in establishing trust); Loeb v. Commissioner, 7th Cir., 1946, 159 F.2d 549, 550 (trustee empowered to apply income to payment of grantor's debt, for which trust property had been pledged); Staley v. Commissioner, 5th Cir. 1943, 136 F.2d 368, 369, cert. denied, 320 U.S. 786, 64 S.Ct. 196, 88 L.Ed. 473 (specified amount of trust income to be paid to grantor); Russell, 1945, 5 T.C. 974, 982, appeal dismissed, 1st Cir. 1946, 154 F.2d 829 (trustee empowered to discharge any indebtedness against property conveyed in trust); Rev.Rul. 57-564, 1957-2 Cum. Bull. 328, (trustee agreed to pay gift taxes incurred by grantor in establishing trust); Rev.Rul. 54-516, 1954-2 Cum. Bull. 54 (trustee directed to use trust income first to pay interest and principal of mortgage on trust property for which grantor remained liable)