DANIEL GERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gerson v. Commissioner
Docket No. 33955-84.
United States Tax Court
T.C. Memo 1989-52; 1989 Tax Ct. Memo LEXIS 51; 56 T.C.M. (CCH) 1202; T.C.M. (RIA) 89052; February 6, 1989
Richard L. Gerson, for the petitioner. Joellyn R. Cattell and Carol-Lynn E. Moran, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioner's Federal income tax for 1976 and 1977 in the respective amounts of $ 360,278.72 and $ 1,619.20. After settlement of some issues, the issues remaining for decision are whether a redemption of corporate stock constituted a constructive distribution to petitioner and whether petitioner realized a loss in the amount of $ 102,500 or a loss in the amount of $ 2,500 on the worthlessness of corporate stock. These issues were submitted fully stipulated to the Court for opinion under Rule 122. [1] Among the documents stipulated was a letter opinion of the Superior Court of New Jersey issued in connection with litigation between petitioner and the estate of his former co-shareholder in two closely held corporations. The parties expressly stipulated that the factual findings and legal conclusions of the Superior Court of New Jersey in the referred-to litigation will be taken as true and correct for purposes of this case. *53 FINDINGS OF FACT Petitioner, Daniel Gerson, resided in Merion, Pennsylvania at the time his petition was filed. The issues in this case relate to two closely held corporations that were owned by petitioner and David Dushoff, deceased. The first corporation, Latin Casino, Inc. (Latin Casino), operated a dinner theatre in New Jersey. The second corporation, Dushoff-Gerson, Inc. (Dushoff-Gerson), was a holding company that owned the improved real estate on which the Latin Casino dinner theatre was located. Petitioner and the deceased each owned 50 percent of the common stock of each corporation. Although Latin Casino experienced bad months, it often booked major entertainers, and it had a wide reputation throughout much of the mid-atlantic region. On March 15, 1961, petitioner and Mr. Dushoff executed a buy-sell agreement under which the survivor was obligated to buy the entire stock interest in each corporation from the estate of the first to die. The stock of each corporation was to be valued each year, and the stock purchase price was to be based on the most recent valuation occurring within two years of the date of death. In the event such a current valuation did not exist *54 on the date of death, an appraiser was to be hired to value the stock and to fix the purchase price for the stock. From 1961 through 1972, updated stock valuations were not obtained. David Dushoff died on December 20, 1972. Soon thereafter, petitioner and Dushoff's widow together with their respective lawyers, accountants, and friends began discussing the business affairs of the two closely held corporations for purposes of transferring the stock interests of Mr. Dushoff's estate to petitioner. Among the items discussed were the buy-sell agreement, the value of the stock, and how the purchase of the stock from Mr. Dushoff's estate might be financed. In May of 1973, a written settlement letter was prepared by the estate's lawyer and forwarded to petitioner. Thereunder, petitioner was to pay $ 100,000 for the 50-percent stock interest of Mr. Dushoff's estate in Latin Casino, and $ 500,000 for the 50 percent stock interest of the estate in Dushoff-Gerson. Under the proposed agreement, the parties contemplated a resolution of their respective rights and obligations under the March 15, 1961, buy-sell agreement, as well as the resolution of other matters relating to the corporations. *55 Petitioner, on the advice of his lawyer, made modifications to the settlement letter, but he initialed it as accepted and returned it to Mrs. Dushoff. On July 3, 1973, a bank gave a loan commitment to the two corporations to loan them $ 1 million. Later in July of 1973, petitioner signed the loan agreement with the bank for the amount of $ 850,000. The record does not indicate whether petitioner signed the loan agreement in his individual capacity or on behalf of the corporations. The loan related to the debt obligations anticipated under the above referred-to settlement agreement. On July 18, 1973, a formal agreement of sale was prepared by one of the lawyers. The agreement of sale reflected essentially the terms of the June 20, 1973, settlement letter. Mrs. Dushoff, as executrix of her deceased husband's estate, refused to sign the formal agreement, and she refused to carry out the terms of the June 20, 1973, settlement letter or of the March 15, 1961, stock purchase agreement. Later in 1973, petitioner filed suit in the Superior Court of New Jersey to obtain specific performance of the June 20, 1973, settlement letter. After protracted litigation, on January 22, 1975, the *56 Superior Court issued the opinion previously referred to. Therein, the June 20, 1973, settlement letter was held to constitute a valid and enforceable contract, and Mrs. Dushoff, as executrix of the estate, was ordered to specifically perform her obligations thereunder. Mrs. Dushoff appealed the decision of the Superior Court, but on September 11, 1976, the parties entered into a partial and conditional settlement of that litigation. The record does not indicate whether the conditions associated with this 1976 settlement were satisfied, nor does it indicate clearly how the appeal from the Superior Court's decision was resolved. In any event, on December 16, 1976, at a special meeting of the board of directors of Dushoff-Gerson, petitioner and other officers of Dushoff-Gerson agreed on behalf of the corporation that the corporation would assume petitioner's obligations under the "buy-sell" agreement. On December 21, 1976, Dushoff-Gerson paid Mrs. Dushoff $ 600,000 in redemption of the 50-percent stock interest of her deceased husband's estate in Dushoff-Gerson. Also on December 16, 1976, petitioner, not the corporations, paid Mrs. Dushoff $ 100,000 in redemption of the 50-percent *57 stock interest of her deceased husband's estate in Latin Casino. On petitioner's 1976 Federal income tax return, petitioner did not reflect the $ 600,000 redemption of the Dushoff-Gerson stock as a constructive distribution to petitioner. Petitioner did reflect on his 1976 tax return a capital loss of $ 102,500 with respect to the worthlessness of his stock investment in Latin Casino. On audit, respondent determined that the $ 600,000 paid by Dushoff-Gerson to redeem the 50-percent interest held by Mr. Dushoff's estate constituted a constructive dividend distribution in favor of petitioner. The distribution was treated as taxable dividend income to the extent of the earnings and profits of Dushoff-Gerson. Thereafter, the distribution was applied to petitioner's basis in the stock he owned in the corporation. After his basis was reduced to zero, the distribution was treated as a long-term capital gain. Respondent also disallowed $ 100,000 of the capital loss petitioner claimed with respect to the worthlessness of the Latin Casino stock on the grounds that petitioner's cost basis therein was only $ 2,500. OPINION The law is well settled that *58 a redemption of stock by a corporation results in a constructive distribution to a continuing shareholder under sections 61(a), 301(c)(1), 302(a), and 316(a), if at the time of the redemption the shareholder was personally and unconditionally obligated to purchase the stock that was redeemed. Jacobs v. Commissioner,698 F.2d 850, 852 (6th Cir. 1983), affg. per curiam a Memorandum Opinion of this Court; Holsey v. Commissioner,258 F.2d 865, 868 (3d Cir. 1958), revg. 28 T.C. 962 (1957); Wall v. United States,164 F.2d 462, 464 (4th Cir. 1947); Stephens v. Commissioner,60 T.C. 1004, 1010 (1973), affd. by order 506 F.2d 1400 (6th Cir. 1974). Because Mrs. Dushoff refused to sell the stock of her deceased husband's estate to petitioner and because of the many other areas of disagreement that arose shortly after Mr. Dushoff's death, petitioner argues that he was relieved of his obligations under the buy-sell agreement executed with Mr. Dushoff in 1961. Petitioner contends that the agreement entered into on June 20, 1973, which in 1975 was *59 ordered to be specifically enforced by the Superior Court, constituted an entirely new agreement under which the stock held by Mr. Dushoff's estate would be redeemed directly by the corporation. Petitioner argues that a novation of the 1961 buy-sell agreement occurred when Mrs. Dushoff refused to comply with the terms thereof, and that the subsequent agreements, litigation, and court order were unrelated to his obligations under the original 1961 buy-sell agreement. Based on the record before us, it is clear that the redemption by Dushoff-Gerson of the stock held by the estate of Mr. Dushoff was directly related to the original 1961 buy-sell agreement entered into by petitioner. On the date of Mr. Dushoff's death, petitioner became obligated to buy the stock from Mr. Dushoff's estate, and Mrs. Dushoff, as executrix of the estate, was obligated to sell the stock to petitioner. The problems, delays, and litigation that arose were directly related to those respective obligations, and are traceable primarily to the failure of petitioner and the deceased to obtain updated valuations of the corporate stock before decedent's death, as called for under the agreement. The December 16, 1976, board *60 of directors meeting and the December 21, 1976, payment in the amount of $ 600,000 by Dushoff-Gerson to Mrs. Dushoff in exchange for the estate's stock interest in Dushoff-Gerson represented the last steps in the continuing efforts of the participants to resolve petitioner's and Mrs. Dushoff's obligations under the 1961 buy-sell agreement. For the reasons stated above, the redemption by Dushoff-Gerson of the stock interest therein held by the estate of David Dushoff constituted a constructive distribution to petitioner. We sustain respondent's determination in this regard. The evidence and arguments made by the parties concerning the second issue are sparse. Respondent does not dispute that petitioner's stock interest in Latin Casino was worthless at the end of 1976, nor that petitioner should be allowed a capital loss with regard to his adjusted cost basis therein. The only dispute concerns the amount of that basis. Petitioner argues that the $ 100,000 he paid to Mrs. Dushoff at the end of 1976 in exchange for the stock interest in Latin Casino he acquired at that time should be added to the cost basis of $ 2,500 that petitioner already had in his stock in Latin Casino. *61 Respondent argues briefly that petitioner's $ 100,000 payment for the additional interest in Latin Casino related to the buy-sell agreement and more properly should be allocated to petitioner's cost basis for his stock interest in Dushoff-Gerson. We find no merit in respondent's argument. Petitioner paid the $ 100,000 for the additional interest in Latin Casino. The $ 600,000 due for the redemption of the Dushoff-Gerson stock was paid by the corporation and has been attributed to petitioner as a constructive distribution. Respondent's argument and our analysis concerning that issue are based on petitioner's long-standing obligation to purchase that stock. In analyzing the second issue, we believe it appropriate to be consistent and to give similar recognition to petitioner's obligation under the 1961 buy-sell agreement to purchase the stock in Latin Casino that was held by Mr. Dushoff's estate. We hold for petitioner on this issue. Decision will be entered under Rule 155.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩