James R. Winnek and Carmen Winnek v. Commissioner.
Winnek v. Commissioner
Docket No. 3439-64.
United States Tax Court
T.C. Memo 1965-258; 1965 Tax Ct. Memo LEXIS 72; 24 T.C.M. (CCH) 1400; T.C.M. (RIA) 65258; September 29, 1965
*72 Held, that where during the taxable year an indebtedness of $17,500 that was owned by the principal petitioner to a corporation of which he held most of the voting stock issued and outstanding, was cancelled by said corporation in connection with its redemption of 250 of said petitioner's 1,450 shares therein, such cancellation constituted a distribution to said petitioner that is taxable as a dividend under section 301 of the 1954 Code. G. Douglas Fox and James M. Sturdivant, for the petitioners. Walter O. Johnson, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined a deficiency of $5,173.80 in the income tax of the petitioners for their taxable calendar year 1962. The issue for decision is: Where during the taxable year an indebtedness of $17,500 that was owed by petitioner James R. Winnek to a corporation named Jim Winnek, Inc. which he operated and controlled, was cancelled by said corporation in connection with its redemption of 250 out of 1,450 of said petitioner's shares of capital stock - does such cancellation constitute a distribution to said petitioner that is taxable as a dividend? Findings of Fact Some of the facts *73 have been stipulated. The stipulation of facts and all exhibits identified therein are incorporated herein by reference. The petitioners, James R. Winnek (also known as J. R. Winnek and Jim R. Winnek) and Carmen Winnek, are husband and wife with residence at Tulsa, Oklahoma. They filed a joint Federal income tax return for the calendar year 1962 with the district director of internal revenue at Oklahoma City. The issue here involved concerns only the husband James R. Winnek, whom we will hereinafter refer to as the "petitioner." In 1948 petitioner participated in the organization of a Texas corporation named The Dayton Exploration Company (hereinafter called the "Dayton Company"). The purpose of this corporation was to engage in exploring for oil and gas deposits through use of an instrument known as a seismograph. Upon incorporation this company issued 1,000 shares of capital stock, of which 250 shares were issued to the petitioner at a total cost to him of approximately $10,000. Thereafter in 1953, petitioner purchased 250 additional shares of said stock from another stockholder named Frank W. Borman, for a total price of $17,500. And subsequently in 1958, the corporation redeemed *74 from a third stockholder, all the other 500 shares of its outstanding stock. The result of all this was, that at all times thereafter until September 30, 1960 (when said Dayton Company was merged into another corporation named Jim Winnek, Inc. in the manner hereinafter more particularly described), petitioner owned and held 100 percent of the total issued and outstanding shares of the capital stock of the Dayton Company. In 1952 petitioner organized under the laws of Oklahoma, the above-mentioned corporation named Jim Winnek,inc. (hereinafter called the "Winnek Corporation"). This company was created for the purpose of engaging in "shot hole" drilling. Upon incorporation, it issued a total of 1,000 shares of capital stock, of which 850 shares were issued to petitioner at a cost which is not established by the evidence; and the remaining 150 shares were issued to three employees of the corporation in amounts of 50 shares each, at a cost to them of $1 per share as an "incentive." At all times thereafter, petitioner was the controlling stockholder, the president and a director. As such, he selected the other directors; decided what jobs the corporation would perform; negotiated and signed *75 all contracts; hired and fired employees; and also borrowed money for the corporation, and pledged his personal assets for the latter's secured loans. Subsequently on September 30, 1960, the above-mentioned Dayton Company (which then had an earned surplus deficit) was merged into the Winnek Corporation. The Winnek Corporation thereupon took over all of the Dayton Company's assets; issued to petitioner 600 new shares of its own capital stock in exchange for his 500 shares of the Dayton Company (being all of the shares of that company outstanding); and the Dayton Company then was dissolved. The result of this was: That the Winnek Corporation thereupon became the surviving corporation; that all of petitioner's previous shareholdings in the Dayton Company were eliminated; and that petitioner's shareholdings in the Winnek Corporation were increased from 850 shares to 1,450 shares - representing 90.63 percent of the total 1,600 shares of the Winnek Corporation then issued and outstanding. Subsequently in late 1961 or early 1962, 150 new shares of the Winnek Corporation were issued to an employee named Gordon Flanery, as a bonus for his taking care of the affairs of the corporation during *76 a period when petitioner was absent. From that time until November 2, 1962 (being the date on which 250 of petitioner's shares were redeemed in the manner hereinafter described), the Winnek Corporation had 1,750 shares of capital stock issued and outstanding, of which petitioner owned 1,450 shares - being 82.85 percent thereof. All of said shares were voting shares. Prior to the above-mentioned merger of the Dayton Company into the Winnek Corporation, petitioner had from time to time received from the Dayton Company, various cash advances in addition to his salary; and also both prior and subsequent to said merger, petitioner had received similar cash advances from the Winnek Corporation. All these advances were received without consideration; and each of said corporations debited all the advances made by it, to an asset account on its books of account, designated "Cash Advances - J. R. Winnek" - which represented an account receivable owed to it by petitioner. No instrument was executed by petitioner to evidence any of such indebtedness to either corporation; no collateral was pledged by petitioner to secure such indebtedness; and no interest was either charged to or paid by petitioner *77 on any of said cash advances. Also, petitioner did not report on any of his Federal income tax returns, any of the cash advances made to him by either corporation as being a taxable dividend. At the time of the above-mentioned merger on September 30, 1960, the net unpaid amount of the Dayton Company account receivable from petitioner in respect of such cash advances was $10,982.91. And in connection with the merger, all of this account receivable was transferred by the Dayton Company to the surviving Winnek Corporation, and was thereupon included by said surviving corporation as one of its assets. As regards the Winnek Corporation's account receivable from petitioner for cash advances, a summary of this account for the period from January 1, 1957, to November 2, 1962 - which reflects all repayments made by petitioner, and which also includes the amount of the cash-advances account of the Dayton Company that was taken over in the 1960 merger - is as follows: Amount
Balance due on January 1, 1957
$ 7,330.76
Advances in 1957
6,726.08
Amount due on December 31, 1957
$14,056.84
Advances in 1958
5,737.43
Amount due on December 31, 1958
$19,794.27
Repayments in 1959
(1,022.75)
Amount due on December 31, 1959
$18,771.52
Journal entry reductions in 1960: [1]
1957 advances taxed to
petitioners as divi-
dends in 1957
($6,726.08)
1958 advances taxed to
petitioners as divi-
dends in 1958
( 5,737.43)
($12,463.51)
Amount due prior to merger on
9-30-60
$ 6,308.01
Dayton account addition on 9-30-60
10,982.91
Advances in 1960
1,471.93
Amount due on December 31, 1960
$18,762.85
Repayments in 1961
(82.31)
Amount due on December 31, 1961
$18,680.54
Advances in 1962
539.71
Amount due on November 2, 1962
$19,220.25
*78 During the period from about 1960 to 1962, the Winnek Corporation had difficulty in making a profit; and in an effort to remedy this situation, it attempted to obtain some drilling contracts related to a Federal Government project. In order to qualify for such contracts it was necessary to obtain a performance bond; but the financial statement of the Winnek Corporation was not sufficiently satisfactory to enable it to obtain such a bond. At about this same time, an insurance agent named Stroud Stacy suggested to petitioner that it would be advisable for the Winnek Corporation to eliminate from its financial statements the account receivable from petitioner for the above-mentioned cash advances - stating that while this would *79 not cause the corporation to be worth any more, such elimination would make the financial statements look better. Petitioner agreed with this suggestion; and he thereupon advised W. J. Chronos, who was an attorney and certified public accountant for the Winnek Corporation, that action should be taken to get the account receivable off the corporate books in some manner or other. Thereafter on November 2, 1962, a special meeting of the board of directors of the Winnek Corporation was held. All directors, including the petitioner, were present; and also in attendance by invitation was the above-mentioned W. J. Chronos. The minutes of this directors' meeting may be summarized as follows: Petitioner, acting as president of the Winnek Corporation, stated that the purpose of calling the meeting was to discuss and improve the financial condition of the company. More specifically, he stated that "there was an account receivable on the Company's books, due from himself, which had a balance of $17,852.63 at May 31, 1962"; [2] and that it was imperative that this account be removed from the books so that the balance sheet of the corporation would be "cleaned up." He then asked for suggestions as *80 to how this might be accomplished. Chronos suggested that "the obvious method would be for Mr. Winnek [the petitioner] to repay the money which had gone from the corporation to him"; and he further said that if petitioner had any savings accounts, life insurance, contracts or other assets which could be transferred, they should be assigned to the corporation in repayment. Petitioner replied, however, that he had "no assets other than his stock ownership in Jim Winnek, Incorporated, and his homestead, which being exempt property he would not consider conveying." [3] *81 Chronos then stated that three other possible methods for eliminating the corporation's account receivable from petitioner, were: (1) Distribution of a dividend by the Winnek Corporation *82 to all stockholders (including petitioner); (2) payment of a bonus to petitioner by the Winnek Corporation; or (3) redemption by the Winnek Corporation of part of petitioner's stockholdings therein, although it was possible that this latter method might be construed by the Federal tax authorities to constitute a taxable dividend. Regarding these three methods, petitioner replied: That the declaration of a dividend by the corporation to all stockholders would not be in accord with sound business judgment; that as regards the payment of a bonus to him, he did not believe that this was a sound idea; but that as to redemption of part of his stockholdings, this would be acceptable to him, if the same would not be construed for income tax purposes to effect the payment of a taxable dividend to him. Petitioner then offered to "sell" 250 shares of his Winnek Corporation stock to the corporation for a price of $17,500 (which was the price that he had paid to Frank Borman in 1953 for 250 shares of the Dayton Company stock - all of which shares were thereafter eliminated when the Dayton Company was dissolved after it had been merged into the Winnek Corporation); and petitioner then further stated *83 that such "sale" would be subject to an option in him to declare the same null and void at any time prior to April 15, 1966, "in the event of an unfavorable ruling in the matter [by the Internal Revenue Service]." Thereupon, the board of directors of the Winnek Corporation unanimously approved a plan under which: (1) That corporation would "purchase" from petitioner, 250 shares of the latter's total holdings of 1,450 shares of the capital stock of said corporation, for a consideration of $17,500; and also that, in connection therewith, the corporation's account receivable from petitioner for cash advances, would be credited and cancelled in the same amount of $17,500. Thereupon the Winnek Corporation, acting pursuant to the above action of its board of directors, redeemed from petitioner as of November 2, 1962, 250 shares of petitioner's total holdings of said corporation's capital stock; and it also, as of the same date, cancelled $17,500 of petitioner's total indebtedness to the corporation for unpaid cash advances. Such actions were reflected on the books of account of the Winnek Corporation: (1) By making a debit to treasury stock in the amount of $17,500; and (2) by making a credit *84 of $17,500 to its account receivable from petitioner for cash advances. The Winnek Corporation, at all times material, kept its books of account in accordance with a fiscal year ended on May 31. At the beginning of its fiscal year strarting on June 1, 1962 (which is the fiscal year during which said redemption of shares and the cancellation of said indebtedness occurred), said corporation had an accumulated earned surplus of $43,150.11. For said year it had a net operating loss per books of $16,395.51. And as of the close of said fiscal year, following said redemption and cancellation of indebtedness, the amount of its accumulated earned surplus was $28,963.93. The parties have stipulated that for each of Winnek Corporation's fiscal years ended on May 31, 1961, 1962 and 1963, the corporation had an earned surplus in an amount that was in excess of the $17,500 indebtedness of petitioner which was cancelled as aforesaid on November 2, 1962. The Winnek Corporation at no time ever formally declared and paid any dividend. At the time of the above-mentioned cancellation of indebtedness, petitioner intended to repay to the corporation the remaining uncancelled portion of his indebtedness *85 to the corporation for cash advances made to him. The petitioner, on the joint Federal income tax return which he and his wife filed for the year 1962, treated the amount of said cancelled indebtedness of $17,500 as proceeds from sale to the Winnek Corporation of the 250 shares of Dayton Company stock which he had acquired from Frank W. Borman in 1953; and he reported no gain as having been realized. The respondent however, in his notice of deficiency herein, determined that the above-mentioned cancellation of indebtedness owned by petitioner to the Winnek Corporation, constituted a distribution to him by said corporation, which is taxable as a dividend under section 301 of the Internal Revenue Code of 1954. Opinion As a general rule, where a corporation makes a distribution to a non-corporate stockholder out of either its earnings and profits accumulated after February 28, 1913, or out of its earnings and profits of the taxable year in which such distribution is made, the amount of such distribution is includable in the gross income of the stockholder as a taxable dividend. Sections 301 and 316 of the 1954 Code. Also the same is generally true, regardless of whether the corporation *86 makes the distribution directly to the stockholder and the latter then uses all or part of the same to repay an indebtedness owing by him to the corporation; or whether the corporation directly applies all or part of the distribution in repayment or cancellation of such indebtedness. See Income Tax Regs., sec. 1.317-1; Bradbury v. Commissioner, (C.A. 1) 298 F. 2d 111, affirming a Memorandum Opinion of this Court. In the instant case however, the cancellation of indebtedness occurred in connection with the redemption of a portion of petitioner's shares of capital stock of Winnek Corporation to which such indebtedness was owed. Under section 302 of the 1954 Code, where a corporation redeems its stock, such redemption will be treated as a distribution in part or full payment in exchange for the stock, if any of paragraphs (1), (2), (3), or (4) of section 302(b) applies. Accordingly, it is necessary for us to here consider the possible applicability of each of these paragraphs which, in pertinent part, may be summarized as follows: Paragraph (1) provides, in substance, that the redemption will be treated as a distribution in payment for the stock, if the distribution is not essentially *87 equivalent to a dividend. Paragraph (2) provides, in substance, that the distribution in redemption shall be treated as a payment in exchange for the stock, if the distribution is substantially disproportionate with respect to the stockholder; provided however, that this paragraph shall not apply unless after the redemption the shareholder owns less than 50 percent of the total combined voting power of all classes of stock entitled to vote. Paragraph (3) provides, in substance, that the distribution in redemption shall be treated as a payment in exchange for the stock, if the redemption is in complete redemption of all of the stock of the corporation owned by the stockholder. Paragraph (4) provides, in substance, that the distribution in redemption shall be treated as a payment in exchange for the stock, if the redemption is of stock issued by a railroad corporation pursuant to a plan of reorganization under section 77 of the Bankruptcy Act. It will be observed that each of said paragraphs, in effect, provides an exception to the previously stated general rule as to when corporate distributions to stockholders will constitute taxable dividends. In the instant case, it is obvious *88 that the only one of the above-mentioned paragraphs of section 302(b) which could possibly be here applicable is paragraph (1), for the following reasons: As regards paragraph (2), it is clearly inapplicable because immediately after the redemption petitioner continued to own 1,200 out of the total 1,500 shares (being more than 50 percent) of the Winnek Corporation's capital stock then issued and outstanding; and all of said shares were voting shares, since the corporation had only one class of stock. As regards paragraph (3), it is clearly inapplicable because the redemption was not in complete redemption of all of the stock of the corporation owned by petitioner. And as regards paragraph (4), it also is clearly inapplicable because the redemption is not of stock issued by a railroad corporation pursuant to a plan of reorganization under section 77 of the Bankruptcy Act. Thus our consideration is here limited to whether paragraph (1) has any application under the facts of the instant case. Petitioner, in his briefs herein, appears to have tacitly agreed with the foregoing conclusion, for he has centered his position solely upon a contention that the redemption of his 250 shares of *89 stock and the related cancellation of $17,500 of his indebtedness to the Winnek Corporation, is not essentially equivalent to a taxable dividend. And, since the Commissioner has made a determination contrary to such contention, petitioner of course has the burden of establishing error in that determination. It is our opinion that he has failed to bear such burden. It should be observed at the outset, that the Winnek Corporation carried said amount of petitioner's indebtedness (and more) on its books of account as an asset in the nature of an account receivable owing to it by petitioner. Also, during the above-mentioned special meeting of said corporation's board of directors on November 2, 1962, petitioner stated to the directors (and thereby conceded) that: "[There] was an account receivable on the Company's books, due from himself, which had a balance of [at least] $17,852.63 at May 31, 1962"; and that W. J. Chronos who was the corporation's attorney and certified public accountant, thereupon advised him that "the obvious method [for eliminating such account from the corporation's accounts] would be for him to repay the money which had gone from the corporation to him." Moreover, *90 there is no dispute that the petitioner actually did receive the amount of said $17,500 indebtedness, either from the Dayton Company prior to the time when that company's account receivable from him was taken over by the Winnek Corporation as an asset in connection with the 1960 merger, or from the Winnek Corporation itself in years both before and after said merger. In addition, it is undisputed that petitioner did not, on any of his various Federal income tax returns, report or treat any of the cash advances which he received from the abovementioned corporations, as being a taxable dividend. Finally, as was pointed out in Kerr v. Commissioner, (C.A. 9, 1964) 326 F. 2d 225, affirming 38 T.C. 723, certiorari denied 377 U.S. 963, Congress in enacting section 302(b)(1) of the 1954 Code, intended that the tests for determining whether a redemption is "essentially equivalent to a dividend" should be the same as those utilized in interpreting and applying the same words in section 115(g)(1) of the 1939 Code; that the question in each case is "one of equivalents," and is primarily a question of fact; that most if not all the Courts of Appeals have considered the most important consideration *91 to be the "net effect" of the transaction; and that the Tax Court, in its opinion in said Kerr case, had "adequately listed" the following criteria as being there relevant: Did the corporation adopt any plan of contraction of its business activities; did the transaction actually result in a contraction of the corporation business; did the initiative for the corporate distribution come from the corporation or the shareholders; was the proportionate ownership of stock by the shareholders changed; what were the amounts, frequency, and significance of dividends in the past; was there a sufficient accumulation of earned surplus to cover distribution or was it partly from capital; and was there a bona fide corporate business purpose for the distribution?… To the same effect, see also Flanagan v. Helvering, (C.A.D.C.) 116 F. 2d 937, 939, affirming a Memorandum Opinion of this Court; United States v. Fewell, (C.A. 5) 255 F. 2d 496, 500; Earle v. Woodlaw, (C.A. 9) 245 F. 2d 119, certiorari denied, 354 U.S. 942; and Ferro v. Commissioner, (C.A. 3) 242 F. 2d 838, affirming a Memorandum Opinion of this Court. We are satisfied, after considering and weighing all the evidence herein, that none *92 of the above-stated tests (or indeed any other test that we regard to be relevant) has here been met. (1) The Winnek Corporation did not adopt any plan for contraction of its business activities; for at the above-mentioned special meeting of said corporation's board of directors at which the plan for redemption of part of petitioner's shares of stock was considered and adopted, no mention was made of any contraction of the corporation's business affairs; and the evidence herein establishes that, to the contrary, the corporation actually was endeavoring to expand its business by attempting to acquire additional drilling contracts. (2) The initiative for cancellation of petitioner's indebtedness came from the petitioner, as is shown by the minutes of the above-mentioned special meeting of the corporation's board of directors; and petitioner's principal concern at said meeting was whether such cancellation would be treated by the Internal Revenue Service as a taxable dividend to him. (3) The proportionate ownership of stock by the shareholders was not substantially changed; for before the redemption petitioner owned 82.85 percent of the total issued and outstanding shares of stock, while *93 immediately after the redemption he owned 80 percent; and under the particular facts here present, it is our opinion that such change was not substantial. See Bradbury v. Commissioner, supra.(4) The corporation had never formally declared and paid any dividend to its stockholders. (5) Both before and after the redemption, there was a sufficient accumulation of earned surplus to cover the distribution. And (6), the distribution served no bona fide corporate purposes; for as petitioner recognized in his testimony, it did not "make the company worth any more"; and instead, it actually reduced the corporation's assets, as would also have been the case if the corporation had, in accordance with W. J. Chronos' second and third suggestions at the special board of directors' meeting, either formally paid a dividend or had paid a bonus to petitioner - as a means through which he could have repaid the amounts which he had theretofore received without consideration, and which had caused the creation of the account receivable from him that is here involved. We approve the Commissioner's determination that the cancellation of $17,500 of petitioner's indebtedness to the Winnek Corporation, obtained *94 in redemption of 250 of his 1,450 shares of stock in that corporation, is a distribution to him which is taxable as a dividend under section 301 of the 1954 Code. Decision will be entered for the respondent. Footnotes
1. During 1960 an internal revenue agent examined the 1957 and 1958 income tax returns of petitioner and his wife; and he then proposed to increase the taxable incomes reflected on these returns, by including as constructive dividends the respective amounts of the 1957 and 1958 advances which petitioner had received from the Winnek Corporation. Petitioner and his wife consented to the agent's proposed adjustments, and paid the resulting additional taxes and interest.↩
2. This amount is less than that which, as we have hereinabove found, was reflected in the corporation's books of account. However, such difference is not important for present purposes, because even the above amount which petitioner conceded to be owing by him is in excess of the portion of his indebtedness which, as hereinafter shown, was cancelled on November 2, 1962.↩
3. The evidence herein indicates that this statement of petitioner was not wholly correct. The parties have stipulated that the following is a statement of petitioner's financial condition on March 15, 1963, and that this statement also substantially represents his financial condition at or about the time of the cancellation of indebtedness on November 2, 1962, which is here involved: Assets
Cash
$ 750.00
1,000 shs. of Winnek Corporation
26,000.00
Producing leases and royalties
287.00
Nonproducing leases and royalties
1,200.00
City real estate
26,000.00
Cash value of personal life insur-
ance
21,988.51
Total
$76,225.51
Liabilities
Current bills
$ 255.00
Mortgage on city real estate
12,987.75
Total debt
$13,242.75
Net Worth
$62,982.76 [It should be observed that immediately prior to the stock redemption and cancellation of indebtedness on November 2, 1962, petitioner owned 1,450 rather than 1,000 shares of stock of the Winnek Corporation; and that such additional 450 shares, if accorded the above-stated value of $26 per share, would represent an additional asset of $11,700. Also as of said date, petitioner had an additional liability of $17,500, representing his account payable to the Winnek Corporation for cash advances received, which as hereinafter shown was cancelled on said date.]↩